MORGAN, LEWIS & BOCKIUS LLP
Carrie A. Gonell, Bar No. 257163
David J. Rashé, Bar No. 318400
600 Anton Boulevard, Suite 1800
Costa Mesa, CA 92626-7653
Tel: +1.714.830.0600
Fax: +1.714.830.0700
carrie.gonell@morganlewis.com
david.rashe@morganlewis.com

Attorneys for Defendant
LANE BRYANT BRANDS OPCO LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANIA COLE, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>LANE BRYANT, INC., a Delaware corporation; LANE BRYANT BRANDS OPCO LLC, an Ohio limited liability company; LANE BRYANT #6243, INC., a Florida corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: _____<br><br>Santa Clara County Superior Court, Case No. 22CV403105<br><br>**DEFENDANT LANE BRYANT BRANDS OPCO LLC'S NOTICE OF REMOVAL TO FEDERAL COURT**<br><br>[28 U.S.C. §§ 1332, 1441, 1446, and 1453] |

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER COUNSEL OF RECORD:

## I.   JURISDICTION

1. Defendant provides this statement of jurisdiction pursuant to Civil L.R. 3-5. PLEASE TAKE NOTICE THAT Defendant Lane Bryant Brands Opco LLC ("Defendant"), by and through its counsel, removes the above-entitled action to this Court from the Superior Court of the State of California, County of Santa Clara, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, because minimum diversity exists and the amount in controversy exceeds $5 million. This removal is based on the grounds stated herein.

## II.   PROCEDURAL BACKGROUND

2. On September 14, 2022, Plaintiff Shania Cole ("Plaintiff") filed a putative class action complaint in the Superior Court of California, County of Santa Clara, entitled *Shania Cole, individually, and on behalf of other members of the general public similarly situated v. Lane Bryant, Inc., a Delaware corporation; Lane Bryant Brands Opco LLC, an Ohio limited liability company; Lane Bryant #6243, Inc., a Florida corporation; and DOES 1 through 10, inclusive*, Case No. 22CV403105 (the "Complaint").

3. Plaintiff personally served copies of the Summons and the Complaint on Defendant's registered agent for service of process on September 30, 2022. True and correct copies of the Summons, Complaint, and all documents served with the Complaint are attached as **Exhibit A**.

4. The Complaint seeks damages, penalties, and injunctive relief on behalf of a putative class for: (1) failure to pay minimum wages; (2) failure to provide meal periods; (3) failure to authorize and permit rest periods; (4) failure to provide compliant wage statements and maintain payroll records; (5) failure to timely pay all wages due upon termination; (6) failure to timely pay all wages due

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

2                                                          NOTICE OF REMOVAL

DB2/ 44339291.4

during employment; (7) violation of California's Unfair Competition Law ("UCL") for unlawful business practices; and (8) violation of the UCL for unfair business practices. (Ex. A, Complaint ("Compl.") ¶¶ 42-102.)

5. Plaintiff alleges all causes of action, except the fourth course of action, individually and on behalf of a putative class defined as "[a]ll persons who worked for Defendants as non-exempt, hourly paid employees in California, at any time from February 15, 2020, until the date of trial ("Class")." (*Id.* ¶ 36.) Plaintiff alleges the fourth cause of action individually and on behalf of a putative subclass defined as "[a]ll persons who worked for Defendants as non-exempt, hourly paid employees in California and who received at least one wage statement within one (1) year prior to the filing of the initial complaint until the date of trial ("Subclass")." (*Id.* ¶ 37.)

6. On October 31, 2022, Defendant filed its Answer to Plaintiff's Complaint. A true and correct copy of this Answer is attached as **Exhibit B**.

7. Exhibits A and B constitute all the pleadings, process, and orders served upon or by Defendant in the Superior Court action.

8. Counsel for Defendants Lane Bryant, Inc. and Lane Bryant #6243, Inc. has represented that Lane Bryant, Inc. and Lane Bryant #6243, Inc. consent to and do not object to this removal.

### III. REMOVAL IS TIMELY

9. This Notice of Removal is timely, pursuant to 28 U.S.C. sections 1446(b)(3) and 1453, because it is filed within 30 days of Plaintiffs' service of the Summons and Complaint on Defendant. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (explaining that the 30-day period for removal runs from the service of the summons and complaint). No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

DB2/ 44339291.4

3                                    NOTICE OF REMOVAL

## IV. THE COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION UNDER CAFA

10. This lawsuit is a putative class action.[1] (Compl. ¶¶ 1, 34, Prayer for Relief ¶¶ 2-4). Removal under the Class Action Fairness Act ("CAFA") is proper pursuant to 28 U.S.C. sections 1441, 1446, and 1453 because: (i) diversity of citizenship exists between at least one putative class member and Defendant; (ii) the aggregate number of putative class members in the proposed class is 100 or greater; and (iii) the Complaint places in controversy more than $5 million, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2), (d)(5)(b), 1453.[2] Although Defendant denies Plaintiff's factual allegations and denies that Plaintiff—or the class or classes she purports to represent—are entitled to the relief requested in the Complaint, based on Plaintiff's allegations in the Complaint and Prayer of Relief, all requirements for jurisdiction under CAFA have been met in this case.

### A. Diversity of Citizenship Exists

11. To satisfy CAFA's diversity requirement, a removing party seeking removal must establish only that minimal diversity exists, that is, that one putative class member is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)). Plaintiff is a citizen of California. Defendant is a citizen of Ohio. Thus, minimal diversity exists and removal is proper.

---

[1] Defendant denies, and reserves the right to contest at the appropriate time, that this action can properly proceed as a class action. Defendant further denies Plaintiff's claims and denies that she can recover any damages.

[2] Defendant denies Plaintiff's factual allegations and denies that Plaintiff and members of the putative class are entitled to any relief whatsoever.

### 1. Plaintiff is a Citizen of California

12. "An individual is a citizen of the state in which he is domiciled . . . ." *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)).  For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l,* 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).  Domicile is determined by "an individual's 1) residence in a state, and 2) his intent to remain indefinitely." *Boon*, 229 F. Supp. 2d at 1019.  Evidence of continuing residence creates a presumption of domicile.  *Washington v. Hovensa LLC*, 652 F.3d 340, 395 (3d Cir. 2011); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994).

13. Plaintiff alleges in the Complaint that she is a resident of Aromas in Monterey County, California. (Compl. ¶ 4.)  The Complaint does not allege any alternative place of residence or state of citizenship for Plaintiff, nor does the Complaint allege an intent by Plaintiff to move her residence outside of California.  On information and belief, Plaintiff intends to remain in California.  Accordingly, Plaintiff is a citizen of California for purposes of removal.

### 2. Defendant is Not a Citizen of California

14. For purposes of establishing diversity jurisdiction, a corporation is deemed to be a citizen of any state in which it has been incorporated and of any state where it has its principal place business.  28 U.S.C. § 1332(c)(1).  The "principal place of business" for the purpose of determining diversity subject matter jurisdiction refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities . . . [I]n practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, i.e., the

'nerve center,' and not simply an office where the corporation holds its board meetings. . . ." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

15.  For CAFA diversity purposes, a limited liability company is deemed to be a citizen of the state where it is organized and the state where it has its principal place of business. 28 U.S.C. § 1332(d)(10); *see also Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 704 (4th Cir. 2010) (holding that a limited liability company qualifies as an "unincorporated association" under Section 1332(d)(10) for purposes of CAFA removal); *Jack v. Ring LLC*, 553 F. Supp. 3d 711, 715 (N.D. Cal. 2021) (concluding same); *Ramirez v. Carefusion Res., LLC*, 2019 WL 2897902, at *2 (S.D. Cal. July 5, 2019) (same). Defendant is, and at all pertinent times was, organized under the laws of the State of Ohio. Defendant's principal place of business and corporate headquarters are in New Albany, Ohio, where its officers, direct, control, and coordinate corporate activities. Defendant has a corporate office in New York, but has no corporate offices in California now or at any time relevant to this action.

16.  Defendant is now, and was at the time of the filing of this action, a citizen of Ohio for purposes of determining diversity jurisdiction under CAFA. Therefore, diversity of citizenship exists under CAFA because at least one member of the putative class – Plaintiff – is a citizen of a state different than Defendant. 28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity" under which "any member of a class of plaintiffs is a citizen of a State different from any Defendant").

17.  Additionally, although Plaintiff has listed 10 fictitiously-named "Doe" defendants, the citizenship of these "Doe" defendants is disregarded for purposes of removal. 28 U.S.C. § 1441(a); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998) (for removal purposes, the citizenship of defendants sued under fictitious names shall be disregarded).

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Costa Mesa

6                                                                 NOTICE OF REMOVAL

DB2/ 44339291.4

### B. The Putative Class Has More Than 100 Members

18. CAFA's requirement that proposed class membership be no less than 100 (28 U.S.C. § 1332(d)(5)) is satisfied here because the putative class has more than 100 members. Plaintiff seeks to represent "[a]ll persons who worked for Defendants as non-exempt, hourly paid employees in California, at any time from February 15, 2020, until the date of trial ("Class")." (*Id.* ¶ 36; *see also id.* ¶ 37.) Based on Plaintiffs' definition and according to Defendant's business records, the putative class contains more than 1,100 non-exempt employees who are working or have worked for Defendant in California between January 1, 2021 and October 21, 2022. (*See also* Compl. ¶ 41(a) (estimating the class is greater than 100 individuals).) Thus, the putative class contains more than 100 members.

### C. The Amount In Controversy Exceeds $5,000,000[3]

19. Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(6).

20. A removing defendant "must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014) (quoting 28 U.S.C. § 1446(a)). The short and plain statement "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 89. It is beyond dispute that "a removing defendant's notice of removal need not

---

[3] This Notice of Removal addresses the nature and amount of damages that the Complaint places in controversy. Defendant refers to specific damages estimates and cites to comparable cases solely to establish that the amount in controversy exceeds the jurisdictional minimum. Defendant maintains that Plaintiff's claims lack merit and that Defendant is not liable to Plaintiff or any putative class member in any amount whatsoever. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages based upon the allegations contained in the Complaint or otherwise. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendant's] liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). In addition, Defendant denies that this case is suitable for class treatment.

contain evidentiary submissions but only plausible allegations of the jurisdictional elements." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (internal citations omitted); *see also Dart Cherokee*, 574 U.S. at 84 (holding that a "statement 'short and plain' need not contain evidentiary submissions"); *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) (reversing district court's order remanding the action to state court due to an "inappropriate demand of certitude from [the defendant] over its assumptions used in calculating the amount in controversy" for purposes of CAFA removal).

21. The ultimate inquiry is what amount a complaint places "in controversy," not what a defendant may actually owe in damages. *LaCross v. Knight Transportation Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) (citation omitted) (explaining that courts are directed "to first look to the complaint in determining the amount in controversy"); *see also Jauregui*, 28 F.4th at 993 ("At that stage of the litigation, the defendant is being asked to use the plaintiff's complaint—much of which it presumably disagrees with—to estimate an amount in controversy. This is also at a stage of the litigation before any of the disputes over key facts have been resolved.")  The burden to establish the jurisdictional amount under CAFA "is not 'daunting,' as courts recognize that under this standard, a removing defendant is not obligated to 'research, state and prove the plaintiff's claims for damages.'" *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008); *see also LaCross*, 775 F.3d at 1203 (rejecting plaintiff's argument for remand based on the contention that the class may not be able to prove all amounts claimed: "Plaintiffs are conflating the amount in controversy with the amount of damages ultimately recoverable."); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (in alleging the amount in controversy, defendants "are not stipulating to damages suffered, but only estimating the damages in controversy.").

22. The allegations in the removing defendant's notice of removal may rely on a chain of reasoning that includes assumptions and an assumption may be

reasonable if it is founded on the allegations of the complaint. *Anderson v. Starbucks Corp.*, 556 F. Supp. 3d 1132, 1136-37 (N.D. Cal. 2020) (citing *Arias*, 936 F.3d at 925 (9th Cir. 2019)).  Moreover, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5 million either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief or declaratory relief)." Senate Judiciary Report, S. REP. 109-14, at 42.  As the United States Supreme Court has advised, "no antiremoval presumption attends case invoking CAFA" because Congress intended to "facilitate adjudication of certain class actions in federal court." *Dart Cherokee*, 574 U.S. at 87.

23.  In assessing the amount in controversy, a court must "assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Campbell v. Vitran Exp., Inc.*, 471 F. App'x. 646, 648 (9th Cir. March 8, 2012) (citing *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)). When the complaint is "lacking in factual detail," a defendant seeking removal is particularly "justified in employing reasonable estimates" to establish the amount in controversy. *Ritenour v. Carrington Mortg. Servs., LLC*, 228 F. Supp. 3d 1025, 1029 (C.D. Cal. 2017); *see also Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007) (denying remand where defendant applied reasonable assumptions to complaint that had no fact-specific allegations because a plaintiff seeking to avoid removal "could have alleged facts specific to her claims which would narrow the scope of the putative class or damages sought").

24.  While Defendant denies Plaintiff's factual allegations and denies that she or the putative class or subclass she seeks to represent are entitled to any of the relief for which Plaintiff has prayed, it is clear that, when the potential value of the claims of Plaintiff and the putative class members are aggregated, the allegations within the Complaint put into controversy an amount in excess of $5 million.

DB2/ 44339291.4

25.     Plaintiff defines the relevant time period at issue in this action as the period from February 15, 2020, until the date of trial (Compl. ¶ 36), but Defendant can establish the amount in controversy requirement is met looking at just the time period beginning on January 1, 2021.

### 1. Plaintiff's Second Cause of Action for Meal Period Violations Puts at Least $629,243.62 in Controversy

26.     Plaintiff's Complaint includes allegations that Defendant failed to provide all statutorily required meal periods to Plaintiff and the putative class members and did not provide premium payments for missed meal periods. (*Id.* ¶¶ 26, 40(b), 51-59.) Plaintiff makes systemic allegations that Defendant failed to provide uncontrolled meal periods during all times relevant to this action.

27.     Specifically, Plaintiff alleges that "Defendants had, and continue to have, a loss prevention and/or safety policy requiring employees to undergo mandatory security checks by a supervisor when exiting the premises," which resulted in Plaintiff and the class members being "required to undergo security screenings when exiting the premises after clocking out for their meal periods" and "Plaintiff's and class members' meal periods were shortened" as a result. (*Id.* ¶ 54.) Plaintiff further alleges that "Defendants had a company-wide policy and/or practice of requiring that Plaintiff and class members carry a company-issued radio to respond to requests at all times, including during meal periods." (*Id.* ¶ 55.)

28.     Plaintiff further alleges that "[a]t all times mentioned herein, Defendants knew or should have known that as a result of their policies, Plaintiff and class members were not actually relieved of all duties to take timely, uninterrupted meal periods." (*Id.* ¶ 57.) Although Defendant disagrees with the factual and legal merits of this allegation, Plaintiff's meal period violation theory is that Defendant's alleged security screening and radio policies each imposed unlawful controls on employees during meal periods such that lawful meal periods were per se not provided.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

10                                                            NOTICE OF REMOVAL

DB2/ 44339291.4

29. Plaintiff also alleges that Defendant failed to pay meal period premiums as required by law and that she and the putative class are entitled to recover a meal period premium for each work day that a duty-free meal period was not provided. (*Id*. ¶¶ 57-59.)

30. For damages, Plaintiff seeks "an award . . . of one (1) hour of pay at each employee's regular rate of pay for each workday that a meal period was not provided" and "premiums pursuant to California Labor Code section 226.7(c)." (*Id.*, Prayer for Relief ¶¶ 12, 14.)

31. Based on Plaintiff's systemic allegation that Defendant's "unlawful" policies subjected all class members to unlawful control during meal periods, and thus allegedly prevented employees from being provided compliant uncontrolled meal periods, the Complaint alleges a 100% violation rate for meal period claims when calculating the amount placed in controversy as to this class claim. *See Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) (upholding application of 100% meal period violation rate and explaining that "[i]t is not unreasonable to assume that when a company has unlawful policies and they are uniformly adopted and maintained, then the company may potentially violate the law in each and every situation where those policies are applied"); *Ford v. CEC Entm't, Inc.*, 2014 WL 3377990, at *3 (N.D. Cal. July 10, 2014) (finding employer's assumed violation rate reasonably grounded in complaint alleging a "systemic, company-wide policy").

32. Defendant's review of data shows that between January 1, 2021 and October 21, 2022, 1,128 current and former non-exempt employees (putative class members) worked approximately 135,032 shifts. Of those shifts, at least 54,891 exceeded 6 hours in length. Additionally, while the hourly rates of pay earned by the putative class members during this period of time ranged from $14.00 to $37.53, the average hourly rate of pay earned by putative class members' during this time period was $15.83. Based on the express allegations in the Complaint,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

11                                          NOTICE OF REMOVAL

DB2/ 44339291.4

1  Defendant conservatively calculates that Plaintiff's Complaint places at least
2  **$768,474** in controversy for the meal period claim (54,891 shifts x $14.00).

33. While Plaintiff alleges that she and the putative class members are entitled to recover a meal period premium for each workday that a duty-free meal period was not provided, Defendant conservatively adjusts its calculation for the amount in controversy under this claim as **$629,243.62**, calculated as the amount stated above less $139,230.38 in meal period premiums paid by Defendant to the putative class members during the time period from January 1, 2021 to October 21, 2022.

### 2. Plaintiff's Third Cause of Action for Rest Period Violations Puts at Least $1,581,272 in Controversy

34. Plaintiff's Complaint includes allegations that Defendant failed to provide all statutorily required rest periods to Plaintiff and the putative class members and did not provide premium payments for missed rest periods. (*Id.* ¶¶ 27, 40(c), 61-68.) Plaintiff makes systemic allegations that Defendant failed to provide uncontrolled rest periods during all times relevant to this action

35. Specifically, Plaintiff alleges that "Defendants' company-wide . . . requirement that employees carry a company-issued radio at all times, including during rest periods, prevented Plaintiff and class members from being relieved of all duty to take rest periods. (*Id.* ¶ 64.) Plaintiff further alleges that "Defendants maintained and implemented a company-wide on-premises rest period policy, which mandated that Plaintiff and class members remain on the premises during their rest periods," and that, because of this policy, "Plaintiff and class members . . . were denied the ability to use their rest periods freely for their own purposes, such as completing personal errands. Thus, Defendants effectively maintained control over Plaintiff and class members during rest periods." (*Id.* ¶ 65.)

36. Plaintiff also alleges that Defendant failed to pay rest period premiums as required by law and that she and the putative class are entitled to recover a rest

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

DB2/ 44339291.4

1  period premium for each work day that a duty-free rest period was not provided. (*Id.* ¶¶ 67-68.)

2  37. For damages, Plaintiff seeks "an award . . . of one (1) hour of pay at each employee's regular rate of pay for each workday that a rest period was not provided" and "premiums pursuant to California Labor Code section 226.7(c)." (*Id.*, Prayer for Relief ¶¶ 19, 21.)

38. Based on Plaintiff's systemic allegation that Defendant's "unlawful" policies subjected all class members to unlawful control during rest periods, and thus allegedly prevented employees from being provided compliant uncontrolled rest periods, the Complaint alleges a 100% violation rate for rest period claims when calculating the amount placed in controversy as to this class claim. *See Mejia*, 2015 WL 2452755, at *4 (upholding application of 100% violation rate); *Ford*, 2014 WL 3377990, at *3 (finding employer's assumed violation rate reasonably grounded in complaint alleging a "systemic, company-wide policy").

39. The 1,128 current and former non-exempt employees (putative class members) referenced above worked at least 112,948 shifts that exceeded 3.5 hours in length. Again, these employees' average hourly rate of pay was $15.83. Based on the express allegations in the Complaint, Defendant conservatively calculates that Plaintiff's Complaint places at least **$1,581,272** in controversy for the rest period claim (112,948 shifts x $14.00).

### 3. Plaintiff's Fourth Cause of Action for Failure to Provide Compliant Wage Statements Puts at Least $1,278,000 in Controversy

40. Plaintiff alleges in support of her fourth cause of action that "Defendants have knowingly and intentionally provided Plaintiff and Subclass members within uniform, incomplete, and inaccurate wage statements." (Compl. ¶ 71.) Plaintiff alleges more specifically that Defendant violated Labor Code section 226(a), subdivisions (1), (2), (5), and (9), by failing to issue wage statements that correctly listed employees' gross wages earned, total hours worked, net wages

earned, and all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each rate. (*Id.*)

41. The Complaint describes meal and rest period premiums as "wages." (*See id.* ¶ 31.) The requirement to accurately list employees' gross wages and net wages earned on wage statements under Labor Code section 226(a) extends to the reporting of premium pay for meal and rest periods. *Naranjo v. Spectrum Security Servs., Inc.*, 13 Cal. 5th 93, 121 (2022).

42. Plaintiff does not allege that Defendant has ever suspended or discontinued the alleged policies and/or practices of requiring mandatory security screenings during meal periods, requiring employees to carry radios during meal and rest periods and to respond at all times, or prohibiting employees from leaving Defendant's premises during rest periods.

43. Defendant's review of data shows that approximately 847 non-exempt employees (putative class members) worked an estimated 13,215 bi-weekly pay periods in California from September 14, 2021 (one year before the Complaint was filed) and September 14, 2022. By assigning $50 to each of these employees for their first pay period during this time period and assigning $100 to each of these employees for each subsequent pay period during this time period, but capping each employees' individual penalty amount at $4,000 (to the extent the penalties reached this amount), Defendant calculates that Plaintiff's claim for wage statement penalties under Labor Code section 226(a) places in controversy at least **$1,278,000**.

   **4.**  **Plaintiff's Fifth Cause of Action for Failure to Pay Timely Pay Wages at Separation of Employment (Waiting Time Penalties) Puts at Least $1,421,784 in Controversy**

44. Plaintiff alleges that all employees were underpaid meal and rest period premiums as a result of Defendant's systemic policies and practices not to relinquish control over how employees spend their time during meal and rest period

by requiring employees to undergo security screenings during their meal periods, requiring employees to carry radios and respond to them at all times, including during meal and rest periods, and prohibiting employees from leaving Defendant's premises during rest periods. (Compl. ¶¶ 26-27, 40(b)-(c), 45, 47, 54-55, 64-65.)

45. Plaintiff alleges that the meal and rest break violations entitle her and the putative class to meal and rest break premiums, which neither she nor any other terminated employee were timely paid at or within seventy-two hours of the end of their employment with Defendant:

> Additionally, Defendants *willfully failed to pay* Plaintiff and class members who are no longer employed by Defendants the earned and unpaid wages set forth above, including but not limited to, minimum wages and/or *meal and rest period premiums*, either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ.

(*Id.* ¶ 80) (emphasis added.) Plaintiff also alleges that "[w]hether Defendants failed to pay earned minimum wages and/or meal and rest period premiums due to Plaintiff and class members upon their discharge" is a "common question" supporting class certification in this action. (*Id.* ¶ 40(f).)

46. Plaintiff further alleges that "Plaintiff and class members are therefore entitled to recover from Defendants the statutory penalty wages for each day they were not paid, at their regular rate of pay, up to a thirty (30) day maximum pursuant to California Labor Code section 203." (*Id.* ¶ 81; *see also id.*, Prayer for Relief ¶¶ 31, 33.)

47. Plaintiff does not allege that Defendant has ever suspended or discontinued the alleged policies and/or practices of requiring mandatory security screenings during meal periods, requiring employees to carry radios during meal and rest periods and to respond at all times, or prohibiting employees from leaving Defendant's premises during rest periods.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

DB2/ 44339291.4

15

NOTICE OF REMOVAL

48. Plaintiff also does not allege that any meal and rest period premiums wages owed to terminated employees were ever paid to terminated employees at anytime following the termination of their employment. Based on Plaintiff's allegations, it is appropriate to use a 100% violation rate for waiting time penalties to calculate the amount in controversy. *See Ford*, 2014 WL 3377990, at *3 ("Assuming a 100% violation rate is thus reasonably grounded in the complaint . . . [b]ecause no averment in the complaint supports an inference that these sums were ever paid."); *see also Jauregui*, 28 F.4th at ("But it was not unreasonable for [defendant] to assume that the vast majority (if not all) of the alleged violations over the *four years* at issue in this case would have happened more than 30 days before the suit was filed, which would entitle the employees to the 30-day penalty.") (emphasis in original).

49. Labor Code section 203 provides that an employer who willfully fails to timely pay wages to an employee who is discharged or quits, must pay, as a penalty, the "wages of the employee . . . from the due thereof . . . until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

50. Defendant's review of data shows that 651 non-exempt employees (putative class members) worked for Defendant in California since January 1, 2021, but separated from their employment with Defendant prior to August 14, 2022. Defendant's review of data also shows that these 651 employees worked an average of 5.20 hours per day and earned an average hourly rate of $15.31. Conservatively using the lowest applicable minimum wage during that time period of $14.00 per hour,[4] Defendant calculates that Plaintiff's claim for waiting time penalties under Labor Code section 203 places in controversy at least **$1,421,784** ($14.00 per hour x 5.20 hours per day x 30 days x 651 employees).

---

[4] https://www.dir.ca.gov/dlse/FAQ_MinimumWage.htm.

DB2/ 44339291.4

### 5. Plaintiffs' Request for Attorneys' Fees Places Additional Amounts in Controversy, Exceeding the CAFA Threshold

51. Plaintiff seeks attorneys' fees on all claims. (Compl., Prayer for Relief ¶ 1). Plaintiff specifically seeks attorneys' fees on her second, third, and fifth causes of action pursuant to "California Code of Civil Procedure section 1021.5, or as otherwise provided by law," and seeks attorneys' fees on her fourth cause of action pursuant to "California Labor Code section 226(e)(1)." (*Id.*, Prayer for Relief ¶¶ 16, 23, 29, 35.) Defendant assumes for purposes of the amount in controversy that Plaintiff contends attorneys' fees are "provided by law" under Labor Code section 218.5 for a claim for failure to pay wages by the deadline established in Labor Code sections 201 and 202. *Naranjo*, 13 Cal. 5th at 111-12.

52. When an award of attorneys' fees is authorized by statute, the request for attorneys' fees is properly considered in determining the amount in controversy for removal purposes. *See Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (holding that "if a plaintiff would be entitled under a contract or statute to future attorney's fees, such fees are at stake in the litigation and should be included in the amount in controversy"); *In re Quintus Sec. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (benchmark for attorneys' fees is 25% of the common fund); *Rodriguez v. Cleansource, Inc.*, 2014 WL 3818304, at *4 (S.D. Cal. Aug. 4, 2014) ("[T]he Court finds that using [the 25%] benchmark is the most appropriate way to calculate attorneys' fees in order to establish the amount in controversy for jurisdictional purposes."). "A defendant does 'not need to prove to a legal certainty' that a plaintiff will be awarded the proffered attorneys' fees in the removal notice." *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 n.4 (9th Cir. 2020) (quoting *Dart Cherokee*, 574 U.S. at 88).

53. Based on the above estimate of $4,910,299.62 in controversy on Plaintiff's second through fifth causes of action for failure to provide meal periods, failure to authorize and permit rest periods, failure to provide compliant wage

statements, and failure to timely pay all wages due at separation, the amount of attorneys' fees placed in controversy by Plaintiff's Complaint is at least **$1,227,574.91** (25% x $4,910,299.62).

54. Thus, the total amount placed in controversy by Plaintiff's Complaint is at least **$6,137,874.53** (**$629,243.62** + **$1,581,272** + **$1,278,000** + **$1,421,784** + **$1,227,574.91**).

### 6. Plaintiff's Other Causes of Action Put Additional Amounts in Controversy, Further Exceeding the CAFA Threshold

55. As shown above, using conservative and reasonable assumptions grounded in the allegations of the Complaint to calculate the amount in controversy, Defendant has demonstrated that Plaintiff's meal period, rest period, wage statement, and waiting time penalty claims, as well as their request for attorneys' fees, place more than $6 million in controversy. However, in addition to this amount, Plaintiff's other causes of action place additional amounts in controversy, thus further exceeding the CAFA jurisdictional threshold. As enumerated in Section I, Plaintiffs bring additional causes of action for class wide relief for various alleged Labor Code violations including the failure to pay minimum wages (first cause of action), failure to timely pay all wages due during employment (sixth cause of action), violation of the UCL for unlawful business practices (seventh cause of action), and violation of the UCL for unfair business practices (eighth cause of action). Each of these causes of action places additional amounts in controversy beyond Plaintiff's second through fifth causes of action as well as any request for attorneys' fees on these other causes of action.

## V. VENUE

56. This action was originally filed in the Santa Clara County Superior Court. Initial venue is therefore proper in this district pursuant to 28 U.S.C. §§ 84(a), 1441(a), and 1446(a), and because it encompasses the county in which this action has been pending.

## VI. DIVISIONAL ASSIGNMENT

57. Defendant provides this statement of divisional assignment pursuant to Civil L.R. 3-5. Although Plaintiff's Complaint asserts claims on behalf of a putative class for current and former employees across the State of California, Defendant believes assignment of this action to the San Jose Division of this Court may be appropriate because Plaintiff alleges she worked for Defendant in Gilroy, California, in Santa Clara County. (*See* Compl. ¶ 4.)

## VII. NOTICE

58. Defendant will promptly serve this Notice of Removal on all parties and will promptly file a copy of this Notice of Removal with the clerk of the state court in which this action is pending, as required under 28 U.S.C. § 1446(d).

## VIII. CONCLUSION

59. Based on the foregoing, Defendant respectfully requests that this action be removed to this Court. If any question arises as to the propriety of the removal of this action, Defendant respectfully requests the opportunity to present a brief and oral argument in support of its position that this action is subject to removal.

Dated: October 31, 2022                MORGAN, LEWIS & BOCKIUS LLP

By: /s/Carrie A. Gonell
   Carrie A. Gonell
   David J. Rashé
   Attorneys for Defendant
   LANE BRYANT BRANDS OPCO LLC