Raul Perez (SBN 174687)
Raul.Perez@capstonelawyers.com
Bevin Allen Pike (SBN 221936)
Bevin.Pike@capstonelawyers.com
Daniel Jonathan (SBN 262209)
Daniel.Jonathan@capstonelawyers.com
Trisha K. Monesi (SBN 303512)
Trisha.Monesi@capstonelawyers.com
CAPSTONE LAW APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:     (310) 556-4811
Facsimile:     (310) 943-0396

Attorneys for Plaintiff Shania Cole

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANIA COLE, individually, and on behalf of other members of the general public similarly situated, and as an aggrieved employee pursuant to the Private Attorneys General Act ("PAGA"),<br><br>Plaintiff,<br><br>vs.<br><br>LANE BRYANT, INC., a Delaware corporation; LANE BRYANT BRANDS OPCO LLC, an Ohio limited liability company; LANE BRYANT #6243, INC., a Florida corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 5:22-cv-06714-PCP<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:     December 12, 2024<br>Time:     10:00 a.m.<br>Place:     Courtroom 8 |

1    **TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

2    **PLEASE TAKE NOTICE** that on December 12, 2024 at 10:00 a.m., or as soon thereafter as

3    counsel may be heard, in Courtroom 8 of the above-captioned court, located at 280 South First Street,

4    San Jose, California 95113, the Honorable P. Casey Pitts presiding, Plaintiff Shania Cole will, and

5    hereby does, move this Court to:

6       1.    Preliminarily approve the settlement set forth in the Class Action and PAGA

7    Representative Action Settlement Agreement, attached as Exhibit 1 to the Declaration of Raul Perez;

8       2.    Conditionally certify the proposed Settlement Class;

9       3.    Appoint Shania Cole as the representative for the Settlement Class;

10      4.    Appoint Capstone Law APC as Class Counsel;

11      5.    Approve distribution of the proposed Notice of Class Action Settlement to the

12   Settlement Class;

13      6.    Appoint CPT Group, Inc. as the Settlement Administrator; and

14      7.    Set a hearing date for final approval of the settlement.

15      This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of

16   Points and Authorities in support of Motion for Preliminary Approval of Class Action and PAGA

17   Settlement; (3) the Declaration of Raul Perez; (4) the Class Action and PAGA Representative Action

18   Settlement Agreement; (5) the Notice of Class Action Settlement; (6) the [Proposed] Order Granting

19   Preliminary Approval of Class Action Settlement; (7) the records, pleadings, and papers filed in this

20   action; and (8) upon such other documentary and oral evidence or argument as may be presented to the

21   Court at or prior to the hearing of this Motion.

22

23   Dated: October 10, 2024                     Respectfully submitted,

24

25                                   By:  /s/ Bevin Allen Pike
                                          Raul Perez
26                                        Bevin Allen Pike
                                          Daniel Jonathan
27                                        Trisha K. Monesi
                                          **CAPSTONE LAW APC**
28
                                          Attorney for Plaintiff Shania Cole

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................................1

II. FACTS AND PROCEDURE ...............................................................................................2

  A.  Brief Overview of the Litigation and Settlement Negotiations.................................2

  B.  The Proposed Settlement Fully Resolves Plaintiff's Claims.....................................3

    1.  Composition of the Settlement Class ...........................................................3

    2.  Settlement Consideration..............................................................................3

    3.  Releases by Participating Class Members and PAGA Members ...................5

    4.  The Settlement Administrator Selection Process ..........................................5

III. ARGUMENT .......................................................................................................................5

  A.  Conditional Class Certification Is Appropriate for Settlement Purposes..................5

  B.  Plaintiff's Claims Present Predominant Questions of Law and Fact .........................6

    1.  Common Questions of Law and Fact Predominate as to Plaintiff's Meal Period Claim ....................................................................................................6

    2.  Common Questions of Law and Fact Predominate as to Plaintiff's Rest Period Claim ....................................................................................................7

    3.  Common Questions of Law and Fact Predominate as to Plaintiff's Off-the-Clock Claim ...................................................................................................8

    4.  Common Questions Of Law And Fact Predominate As to Plaintiff's Wage Statement Claim ...........................................................................................9

    5.  Common Questions of Law and Fact Predominate as to Plaintiff's Final Pay Claim .................................................................................................... 10

    6.  Plaintiff Will Adequately Represent the Interests of the Proposed Settlement Class.......................................................................................... 10

    7.  Class Settlement Is Superior to Other Available Means of Resolution ........ 11

  C.  The Proposed Class Action Settlement Should Receive Preliminary Approval.... 11

    1.  The Relief Provided by the Settlement is Fair and Reasonable ................... 12

| | | | |
|---|---|---|---|
| | 2. | The Gross Settlement Amount is Within the Range of Reasonableness | 13 |
| | 3. | The Settlement Provides for an Equitable Method of Allocating Relief to Class Members | 16 |
| | 4. | There Are No Obvious Deficiencies with the Settlement or Preferential Treatment to Certain Class Members | 17 |
| | 5. | The Extent of Discovery Completed Supports Preliminary Approval | 17 |
| D. | | The Court Should Preliminarily Approve the PAGA Settlement | 18 |
| E. | | The Court Should Preliminarily Approve the Negotiated Attorneys' Fees and Costs | 20 |
| F. | | The Court Should Preliminarily Approve the Negotiated Class Representative Incentive Payment | 21 |
| IV. | CONCLUSION | | 22 |

1

## TABLE OF AUTHORITIES

2

3    **FEDERAL CASES**

4    *Aguirre v. Genesis Logistics*, No. SACV 12-00687 JVS (ANx), 2013 WL 10936035

5        (C.D. Cal. Dec. 30, 2013)...........................................................................................................19

6    *Alonzo v. Maximus, Inc*., 275 F.R.D. 513 (C.D. Cal. 2011)..........................................................6

7    *Balderas v. Massage Envy Franchising, LLP,* 2014 WL 3610945. (N.D. Cal. July 21,

8        2014)......................................................................................................................................15

9    *Bernstein v. Virgin Am., Inc*., 990 F.3d 1157 (9th Cir. 2021) ......................................................18

10   *Chu v. Wells Fargo Invst., LLC*, No. C 05–4526 MHP, 2011 WL 672645 (N.D. Cal Feb.

11       16, 2011) ................................................................................................................................20

12   *Churchill Village, LLC v. Gen. Elec*., 361 F.3d 566 (9th Cir. 2004).............................................12

13   *Cotter v. Lyft, Inc*., 193 F. Supp. 3d 1030 (N.D. Cal. 2016)..........................................................19

14   *Dearaujo v. Regis Corp.*, No. 2:14-cv-01408-KJM-AC, 2016 WL 3549473 (E.D. Cal.

15       June 29, 2016) .......................................................................................................................20

16   *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625 (S.D. Cal. 2010)................................................10

17   *Fleming v. Covidien Inc.*, No. ED CV 10-01487 RGK (OPx) (OPX), 2011 WL 7563047

18       (C.D. Cal. Aug. 12, 2011).....................................................................................................19

19   *Franklin v. Kaypro*, 884 F.2d 1222 (9th Cir. 1989) .....................................................................12

20   *Garcia v. Gordon Trucking, Inc.*, No. 1:10–CV–0324 AWI SKO, 2012 WL 5364575

21       (E.D. Cal. Oct. 31, 2012).......................................................................................................20

22   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).............................................. 10, 11, 12

23   *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133 (N.D. Cal. Apr.

24       3, 2009) ..................................................................................................................................20

25   *In Re Armored Car Antitrust Litig.,* 472 F. Supp. 1357 (N.D. Ga. 1979) ...................................15

26   In *re AutoZone, Inc.*, 289 F.R.D. 526 (N.D. Cal. 2012) ..................................................................6

27   *In Re Four Seasons Secs. Laws Litig.,* 58 F.R.D. 19 (W.D. Okla.1972) .....................................15

28

*In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708 (E.D. Pa. 2014) ........................................................................................................... 12

*In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008)................................ 15

*In re Tableware Antitrust Litig.*, 484. F. Supp. 2d 1078 (N.D. Cal. 2007)........................ 13

*In re Taco Bell Wage & Hour Actions*, 2012 U.S. Dist. LEXIS 168219 (E.D. Cal. 2012) .......................... 6

*In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002)............................ 15

*Kamar v. Radio Shack Corp.*, 254 F.R.D. 387 (C.D. Cal. 2008) ....................................... 6

*Kisliuk v. ADT Sec. Servs.*, 263 F.R.D. 544 (C.D. Cal. 2008) ........................................... 9

*Leyva v. Medline Indus. Inc.*, 716 F.3d 510 (9th Cir. 2013).............................................. 6

*Li v. A Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2012 WL 2236752 (N.D. Cal. June 15, 2012) .................................................................................................... 19

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ................................... 13

*Montoya v. Intelicare Direct, Inc.*, No. 15CV1269-LAB, 2016 WL 4142342 ((S.D. Cal. Aug. 4, 2016)........................................................................................................... 12

*Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) .................................... 13

*Newman v. Stein*, 464 F. 2d 689 (2d Cir. 1972) .............................................................. 13

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)....................... 13

*Ortega v. J.B. Hunt Transp., Inc.*, 258 F.R.D. 361 (C.D. Cal. 2009)............................... 9

*Rodriguez v. West Pub. Corp.*, 463 F.3d 948 (9th Cir. 2009) ......................................... 13

*Ruch v. AM Retail Group, Inc.*, 2016 WL 1161453 (N.D. Cal. Mar. 24, 2016).................. 13

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ......................................... 20

*Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541 (2011) ................................................. 6

*Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168 (9th Cir. 2010) .............................. 11

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) ........................... 6

STATE CASES

*Acree v. General Motors Acceptance Corp.*, 92 Cal. App. 4th 385 (2001)....................... 7

*Amaro v. Anaheim Arena Mgmt., LLC*, 69 Cal. App. 5th 521 (2021) .............................. 21

*Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257 (2016) ............................................. 8

*Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004 (2012) ..................................................... 7

*Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018) ............................................. 18, 19

*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008) ............................................................. 21

*Diaz v. Grill Concepts Services, Inc.,* 23 Cal.App.5th 859 (2018) ......................................... 10

*Elder v. Schwan Food Co.*, No. B223911, 2011 WL 1797254 (Cal. Ct. App. May 12,
2011) ................................................................................................................................. 19

*Frlekin v. Apple, Inc.,* 8 Cal. 5th 1038 (2020) ........................................................................ 8

*Gunther v. Alaska Airlines, Inc.*, 72 Cal. App. 5th 334 (2021) ............................................... 18

*Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th 1286 (2010) ................................................... 9

*Laffitte v. Robert Half Internat. Inc.*, 231 Cal. App. 4th 860 (2016) (*Laffitte I*) ....................... 21

*Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19 (2000) ..................................................... 20

*Noori v. Countrywide Payroll & HR Solution, Inc.*, 43 Cal. App. 5th 957 (2019) ....................... 9

*Nordstrom Com. Cases*, 186 Cal. App. 4th 576 (2010) ......................................................... 20

*Sav-On Drug Stores, Inc. v. Super. Ct.*, 34 Cal. 4th 319 (2004) ............................................. 7

*Serrano v. Priest*, 20 Cal. 3d 25 (1977) .............................................................................. 20

*Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112 (2012) .................................... 19


**FEDERAL STATUTES**

Fed. R. Civ. P. 23 ............................................................................................................. 11

Fed. R. Civ. P. 23(a) ..................................................................................................... 5, 10

Fed. R. Civ. P. 23(a)(2) ....................................................................................................... 6

Fed. R. Civ. P. 23(a)(4) ..................................................................................................... 10

Fed. R. Civ. P. 23(b) ........................................................................................................... 6

Fed. R. Civ. P. 23(b)(3) ....................................................................................................... 6

Fed. R. Civ. P. 23(e)(1)(A) ................................................................................................. 11

**STATE STATUTES**

Cal. Lab. Code § 203 ...................................................................................................... 10

Cal. Lab. Code § 226(a) .................................................................................................. 9

Cal. Lab. Code § 2699(h) ................................................................................................ 18


**SECONDARY AUTHORITIES**

3 Conte & Newberg, *Newberg on Class Actions* (4th ed. 2002) ............................... 12, 13

Manual for Complex Litigation (4th ed. 2004) .............................................................. 11

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

5:22-cv-06714-PCP

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3      Plaintiff Shania Cole ("Plaintiff") seeks preliminary approval of the Class Action and PAGA

4  Representative Action Settlement Agreement ("Settlement" or "Settlement Agreement") which if

5  approved, would provide considerable monetary relief for approximately 1,400 current and former

6  employees of Defendant Lane Bryant Brands Opco LLC ("Defendant") (collectively with Plaintiff, the

7  "Parties"). The principal terms of the Settlement provide for the following:

8      (1)    Conditional certification of a Settlement Class defined as: Any person who worked for

9             Defendant as a non-exempt, hourly employee in the State of California at any time from

10            January 1, 2021 through January 25, 2024 ("Class Members").

11     (2)    A **non-reversionary** Gross Settlement Amount of $1,150,000. The Gross Settlement

12            Amount includes:

13            (a)    A Net Settlement Amount of approximately $657,167 (the Gross Settlement

14                   Amount minus the requested attorneys' fees and costs, settlement administration

15                   costs, the $60,000 PAGA settlement, and the Incentive Payment), which will be

16                   allocated to all Class Members on a pro-rata basis according to the number of

17                   weeks each Class Member worked during the Class Period. **The entire Net**

18                   **Settlement Amount will be paid to all Class Members who do not opt out of**

19                   **the Settlement Class, and without the need to submit claims for payment.**

20            (b)    Attorneys' fees in the amount of one-third of the Gross Settlement Amount (or

21                   $383,333), and litigation costs and expenses not to exceed $25,000, to Capstone

22                   Law APC ("Plaintiff's Counsel").

23            (c)    A $60,000 PAGA settlement, of which 75% (i.e., $45,000) will be paid to the

24                   Labor & Workforce Development Agency ("LWDA"), and the remaining 25%

25                   (i.e., $15,000) ("PAGA Member Payment"), will be paid to PAGA Members,

26                   defined as: Any person who worked for Defendant as a non-exempt, hourly

27                   employee in the State of California at any time from August 22, 2022 through

28                   January 25, 2024. **The entire PAGA Member Payment will be paid to all**

**PAGA Members, and without the need to submit claims for payment.**

(d)    Settlement administration costs currently estimated at $14,500, to be paid to the jointly selected Settlement Administrator, CPT Group, Inc. ("CPT").

(e)    An Incentive Payment of $10,000 to Shania Cole for her service on behalf of the Settlement Class, the risks she took in bringing the action on behalf of the class, and for a general release of all claims arising out of her employment with Defendant.

An objective evaluation of the Settlement confirms that the relief negotiated on the Settlement Class's behalf is fair, reasonable, and valuable. The Settlement was negotiated by the Parties at arm's length with helpful guidance from Michael Dickstein, Esq., an experienced and well-respected class action mediator, and the Settlement confers substantial benefits to Class Members. This relief— averaging approximately $470 per Class Member from the Net Settlement Amount—is particularly impressive when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases. Moreover, by settling now rather than proceeding to trial, Class Members will not have to wait (possibly years) for relief, nor will they have to bear the risk of class certification being denied or of Defendant prevailing at trial, or of Plaintiff prevailing at trial but losing on appeal.

As discussed below, the proposed Settlement satisfies all criteria for preliminary settlement approval under applicable law and falls within the range of reasonableness. Accordingly, Plaintiff respectfully requests that this Court grant preliminary approval of the Settlement Agreement.

## II.    FACTS AND PROCEDURE

### A.    Brief Overview of the Litigation and Settlement Negotiations

Plaintiff originally filed this wage and hour action against Defendant in the Santa Clara County Superior Court on September 14, 2022. (Declaration of Raul Perez ["Perez Decl."] ¶ 2.) The Complaint alleged that Defendant failed to: (i) pay minimum wages; (ii) timely pay wages upon termination; (iii) pay wages during employment; (iv) provide meal periods; (v) authorize and permit rest periods; and (vi) provide accurate itemized wage statements and maintain accurate payroll records. (*Id.*) The Complaint also alleged that Defendant's wage and hour violations constituted violations of California's Unfair Competition Law. (*Id.*) On October 10, 2022, Plaintiff submitted a notice letter to the LWDA alleging

Labor Code violations by Defendant. (*Id.*) The allegations in the LWDA Notice tracked the allegations in Plaintiff's Complaint. (*Id.*) On October 31, 2022, Defendant filed a Notice of Removal of Action to Federal Court. (*Id.*)

On October 27, 2023, the Parties participated in a mediation with Michael Dickstein, Esq., an experienced mediator of wage and hour class actions. (Perez Decl. ¶ 3.) At all times, the Parties' negotiations were adversarial and non-collusive. (*Id.*) Mr. Dickstein helped to manage the Parties' expectations and provided a useful, neutral analysis of the issues and risks to both sides. (*Id.*) With Mr. Dickstein's guidance, the Parties were eventually able to negotiate a complete settlement of Plaintiff's claims. (*Id.*) The terms of the settlement are now set forth in complete and final form in the Class Action and PAGA Representative Action Settlement Agreement. (*Id.*, Ex. 1.) The Settlement therefore constitutes a fair, adequate, and reasonable compromise of the claims at issue. (*Id.*)

**B.      The Proposed Settlement Fully Resolves Plaintiff's Claims**

**1.      Composition of the Settlement Class**

The proposed Settlement Class consists of any person who worked for Defendant as a non-exempt, hourly employee in the State of California at any time from January 1, 2021 through January 25, 2024. (Settlement Agreement ¶ 5.) There are approximately 1,400 Class Members.

**2.      Settlement Consideration**

Plaintiff and Defendant have agreed to settle the underlying class claims in exchange for the Gross Settlement Amount of $1,150,000. The Gross Settlement Amount includes: (1) automatic payments to all Participating Class Members—meaning, all Class Members except those who submit timely and valid Requests for Exclusion—from the Net Settlement Amount; (2) $383,333 in attorneys' fees (i.e., one-third of the common fund) and up to $25,000 in litigation costs to Plaintiff's Counsel; (3) Settlement Administration Costs of approximately $14,500; (4) a $45,000 payment to the LWDA; and (5) a Class Representative Incentive Payment of $10,000 for Plaintiff's service on behalf of the Settlement Class, the risks she took in bringing her representative claims, and for a release of all claims arising out of her employment with Defendant. (Settlement Agreement ¶¶ 12-13.) Likewise, the entire PAGA Fund will be distributed to PAGA Members in full. (*Id.* at ¶ 39.)

Payments to Participating Class Members will be made from the Net Settlement Amount.

1    (Settlement Agreement ¶ 64.) The individual allocations will be calculated on a pro-rata basis using the

2    number of weeks worked by each Class Member during the Class Period. (*Id.*) This is a fair and

3    equitable means of apportioning the Net Settlement Fund to Class Members. Class Members who

4    worked for a longer duration during the Class Period will receive proportionally larger payments than

5    those employees who worked for shorter durations. Given that there are approximately 1,400 Class

6    Members, the average net recovery will be approximately $470.

7           This average net recovery is significantly greater than many other wage and hour class action

8    settlements approved by California state and federal courts. *See, e.g.*, *Sandoval v. Nissho of Cal., Inc.*,

9    Case No. 37-2009-00091861 (San Diego County Super. Ct. Dec. 7, 2010) (average net recovery of

10   approximately $145); *Fukuchi v. Pizza Hut*, Case No. BC302589 (L.A. County Super. Ct. Sept. 29,

11   2006) (average net recovery of approximately $120); *Contreras v. United Food Group, LLC*, Case No.

12   BC389253 (L.A. County Super. Ct. Sept. 10, 2009) (average net recovery of approximately $120);

13   *Ressler v. Federated Department Stores, Inc.*, Case No. BC335018 (L.A. County Super. Ct. Jan. 27,

14   2009) (average net recovery of approximately $90); *Doty v. Costco Wholesale Corp.*, Case No. CV05-

15   3241 FMC-JWJx (C.D. Cal. May 14, 2007) (average net recovery of approximately $65); *Sorenson v.

16   PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal. Dec. 17, 2008) (average net recovery of

17   approximately $60); *Lim v. Victoria's Secret Stores, Inc.*, Case No. 04CC00213 (Orange County Super.

18   Ct. Jan. 20, 2006) (average net recovery of approximately $35); *Gomez v. Amadeus Salon, Inc.*, Case No.

19   BC392297 (L.A. Super. Ct. July 23, 2010) (average net recovery of approximately $20); *Jones v. Bath &

20   Body Works, Inc.*, No. 2:13-cv-05206-FMO-AJW (C.D. Cal. July 11, 2016) (average net recovery of

21   approximately $50); and *Palencia v. 99 Cents Only Stores*, No. 34-2010-00079619 (Sacramento County

22   Super. Ct. Oct. 11, 2012) (average net recovery of approximately $80).

23          Payments to PAGA Members will be made from the PAGA Member Payment. (Settlement

24   Agreement ¶ 65.) The individual allocations will be calculated on a pro-rata basis using the number of

25   pay periods by each PAGA Member during the PAGA Period. (*Id.*) This is a fair and equitable means of

26   apportioning the PAGA Fund to PAGA Members. PAGA Members who worked for a longer duration

27   during the PAGA Period will receive proportionally larger payments than those employees who worked

28   for shorter durations. Plaintiff estimates that there are approximately 650 PAGA Members, which results

1   in an average payment of approximately $23.

2   **3.    Releases by Participating Class Members and PAGA Members**

3   In exchange for the Gross Settlement Amount, Plaintiffs and Participating Class Members will

4   release the Released Class Claims during the Class Period. (Settlement Agreement ¶ 76.) And in

5   exchange for the PAGA settlement, Plaintiffs, the LWDA, and PAGA Members will release the

6   Released PAGA Claims during the PAGA Period. (*Id.* at ¶ 77.)

7   **4.    The Settlement Administrator Selection Process**

8   Plaintiff obtained bids from the following administrators: (1) CPT Group, Inc. ("CPT"); (2)

9   Phoenix Class Action Administrators; (3) ILYM Group, Inc.; and (4) Verita (formerly KCC, Inc.) (*See*

10  Perez Decl. ¶ 9, Ex. 2-5.) All administrators were given the same notice parameters and provided bids as

11  follows:

| Administrator | Bid Amount |
|---|---|
| CPT Group, Inc. | $14,500.00 |
| Phoenix Class Action Administrators | $14,500.00 |
| ILYM Group, Inc. | $19,850.00 |
| Verita (formerly known as KCC) | $43,626.00 |

16  Based on CPT's experience administering class action settlements, and the fact that it submitted

17  a competitive bid, the Court should appoint CPT to administer the settlement. For their part, Plaintiff's

18  Counsel have worked with CPT on multiple occasions over the past few years: *Hurtado v. Sweet Earth,*

19  *Inc.*, No. 5:21-cv-04894-VKD (N.D. Cal.); *Verdugo v. Bluescope Buildings North America, Inc.*, No.

20  VCU292562 (Tulare County Superior Court); *Arellano v. R&B Sales and Marketing, Inc.*, No.

21  20STCV04112 (Los Angeles County Superior Court); *Limon v. Crestline Hotels & Resorts, LLC*, No.

22  20STCV37266 (Los Angeles County Superior Court); *Trento v. U.S. Security Associates, Inc.*, No.

23  RG18932522 (Alameda County Superior Court); *Saldana v. Hydrochem LLC*, No. MSC19-02624

24  (Contra Costa County Superior Court). (Perez Decl. ¶ 10.)

25  **III.    ARGUMENT**

26  **A.    Conditional Class Certification Is Appropriate for Settlement Purposes**

27  The parties seek conditional certification of the Settlement Class. A party seeking to certify a

28  class must demonstrate that it has met all four requirements under Federal Rule of Civil Procedure 23(a),

1    and at least one of the requirements of Rule 23(b)—in this case, Rule 23(b)(3). *See Zinser v. Accufix*

2    *Research Inst.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Where, as here, workplace violations are at issue,

3    "the key question for class certification is whether there is a consistent employer practice [or policy] that

4    could be a basis for consistent liability." *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal.

5    2008). Class certification is proper when the plaintiff provides substantial evidence of a company-wide

6    policy on which her theory of liability is based, even if in practice that policy's implementation varied.

7    *See In re Taco Bell Wage & Hour Actions*, No. 07-01314-SAB, 2012 U.S. Dist. LEXIS 168219, at *19

8    (E.D. Cal. Nov. 27, 2012) (certifying meal period class where uniform policy was undisputed but

9    defendant argued "as a matter of practice, the policy is carried out in a variety of ways") (*adopted in full*,

10   2013 U.S. Dist. LEXIS 380 (E.D. Cal. Jan. 2, 2013)).

11           Moreover, "it is the plaintiff's theory that matters at the class certification stage, not whether the

12   theory will ultimately succeed on the merits." *Alonzo v. Maximus, Inc*., 275 F.R.D. 513, 525 (C.D. Cal.

13   2011) (citations omitted). Rule 23's commonality analysis depends on whether a "basic theory of the

14   [plaintiffs'] case" "can be proved on a classwide basis." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338,

15   350, 359, 131 S. Ct. 2541 (2011). However, the fact that class members may have been affected by a

16   defendant's uniform policies/practices to varying degrees or have suffered varying damages *is not a bar*

17   to certification. *See Leyva v. Medline Indus. Inc.,* 716 F.3d 510, 514 (9th. Cir. 2013) ("the presence of

18   individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3).").

19           **B.     Plaintiff's Claims Present Predominant Questions of Law and Fact**

20           For a class to be certified, there must be questions of law or fact common to the class. Fed. R.

21   Civ. P. 23(a)(2). Rule 23(b)(3) also requires that the common questions of law or fact predominate over

22   any individual questions. Thus, the Rule 23(a)(2) commonality inquiry and the Rule 23(b)(3)

23   predominance inquiry overlap. *See In re Autozone, Inc.*, 289 F.R.D. 526, 533 n.10 (N.D. Cal. 2012).

24   Here, each of Plaintiff's theories of liability presents common legal and factual questions that

25   predominate over any individual issues.

26           **1.     Common Questions of Law and Fact Predominate as to Plaintiff's Meal**

27                   **Period Claim**

28           Plaintiff alleges that Defendant's meal period policy does not specifically inform employees that

they must take a meal period within the first five hours of their shifts. Under *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004, 1053 (2012), "[i]f an employer's records show no meal period for a given shift over five hours, a rebuttable presumption arises that the employee was not relieved of duty and no meal period was provided."

Plaintiff contends that her meal period claim under this theory is readily certifiable. Even before *Brinker,* class certification rules were not as demanding as employers typically represent. "Predominance is a comparative concept,' and 'the necessity for class members to individually establish eligibility and damages does not mean individual fact questions predominate.' [Citations.]" *Sav-On Drug Stores, Inc. v. Super. Ct.*, 34 Cal. 4th 319, 334 (2004) ("*Sav-On''*) (citation omitted). Thus, "[a] class action can be maintained even if each class member must at some point individually show his or her eligibility for recovery or the amount of his or her damages, so long as each class member would not be required to litigate substantial and numerous factually unique questions to determine his or her individual right to recover." *Acree v. General Motors Acceptance Corp.*, 92 Cal. App. 4th 385, 397 (2001), fn. omitted.

Accordingly, Plaintiff contends that her meal period theory of liability yields the following predominant, common questions of fact and law:

- Did Defendant maintain and implement a uniform meal period policy that, *in practice*, did not instruct employees to take their first meal period within the first five hours of their shifts?
- Did Defendant fail to pay premiums whenever employees did not take meal periods within the first five hours of their shifts?

Plaintiff maintains that common evidence—in the form of Defendant's written policies, corporate representative testimony, and Class Member declarations—would answer the predominant common questions and would show that the combined effect of Defendant's meal period policies was that it did not provide Class Members to take timely meal periods.

### 2.    Common Questions of Law and Fact Predominate as to Plaintiff's Rest Period Claim

Plaintiff alleges that Defendant's radio policy unlawfully requires employees to respond to

communications over the radio, even when on rest breaks. The California Supreme has confirmed that an employer is required to relieve an employee of all duties during rest breaks. *Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257, 269 (2016) ("[D]uring rest periods employers must relieve employees of all duties and relinquish control over how employees spend their time.").

Plaintiff contends that common questions predominate as to Plaintiff's rest period claim because Defendant's rest period policy creates the following class-wide issues:

- Whether Defendant violates California law by requiring Class Members to respond to radio calls during their rest periods;

- Whether Defendant's uniform written rest period policy violates California law by failing to give full effect to the Wage Orders; and

- Whether Defendant was required to pay Class Members premium compensation for requiring them to respond to radio calls during their rest periods.

Accordingly, the Court should find that common issues of fact and law predominate as to the rest period claim.

### 3. Common Questions of Law and Fact Predominate as to Plaintiff's Off-the-Clock Claim

During closing shifts, Defendant instituted a security policy that requires employees to leave in pairs. Plaintiff alleges that this policy often leads to employees having to wait several minutes after they clock out for a manager (the other employee on shift) to finish his or her tasks before leaving for the day. As a result, employees were not compensated for time spent undergoing security checks at the end of their shifts in violation of California law. *See Frlekin v. Apple, Inc.*, 8 Cal. 5th 1038, 1057 (2020) ("We reiterate that [an employer] may tailor its bag-search policy as narrowly or broadly as it desires and may minimize the time required for exit searches by hiring sufficient security personnel or employing adequate security technology. But it must compensate those employees to whom the policy applies for the time spent waiting for and undergoing these searches.")

Plaintiff contends that common questions predominate as to Plaintiff's off-the-clock claim because Defendant's security policy creates the following class-wide issues:

- Whether Defendant's security policy violates California minimum wage law by requiring

closing shift employees to wait several minutes after they clock out for a manager to leave

the store with them;

- Whether Defendant should have paid minimum wages to employees for this time.

Accordingly, the Court should find that common issues of fact and law predominate as to the

off-the-clock claim.

### 4.    Common Questions Of Law And Fact Predominate As to Plaintiff's Wage Statement Claim

Labor Code section 226(a) provides, in pertinent part, that an employer must provide an

"accurate itemized" wage statement showing net and gross wages earned. Cal. Lab. Code § 226(a).

"[A]n employee has a statutory right to an accurate pay stub." *Jaimez v. Daiohs USA, Inc.*, 181 Cal. App.

4th 1286, 1306 (2010) ("*Jaimez*"); *see also Kisliuk v. ADT Sec. Servs.*, 263 F.R.D. 544, 548 (C.D. Cal.

2008). "The purpose of the wage statement requirement is to provide transparency as to the calculation

of wages. A complying wage statement accurately reports most of the information necessary for an

employee to verify if he or she is being properly paid in accordance with the law and that deductions

from wages are proper." DLSE Opinion Letter 2006.07.06 at 2. One of the requirements for a legally

compliant wage statement is that it includes "the name and address of the legal entity that is the

employer." Labor Code § 226(a)(8) (emphasis added).

Plaintiff alleges that Defendant's pay stubs failed to provide the employer's address. Instead, the

address was only listed on the check portion of the wage statement, which is not "part of" the wage

statement. *Noori v. Countrywide Payroll & HR Solution, Inc.*, 43 Cal. App. 5th 957 (2019). Plaintiff

contends that whether Defendant's wage statements were properly formatted is an inherently common,

certifiable question. Similar wage statement claims have been certified. *See*, *e.g.*, *Ortega v. J.B. Hunt

Transp., Inc.*, 258 F.R.D. 361, 374 (C.D. Cal. 2009) ("Accordingly, particularly in light of the fact that

the pay stubs and settlement summaries provided to California drivers are standardized documents, the

Court finds that Plaintiffs have demonstrated that certification of their pay stub claim is appropriate.");

*Jaimez*, 181 Cal. App. 4th at 1306 (reversing and ordering certification of meal period, rest period, and

wage statement subclasses).

**5.    Common Questions of Law and Fact Predominate as to Plaintiff's Final Pay Claim**

California Labor Code section 203 provides, "[i]f an employer willfully fails to pay ... any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid" for a maximum of 30 days. The failure to pay is willful if the employer knows what it is doing and intends to do what it is doing. *Diaz v. Grill Concepts Services, Inc.,* 23 Cal.App.5th 859, 868 (2018). Willfulness does not require proof that the employer acted with an intent to defraud employees of wages which the employer knows to be due. *Id.*

Plaintiff alleges that as a result of the violations of the Labor Code alleged on behalf of the Class Members, Defendant knew they were not paying meal and rest break premiums despite the fact that they were owed and knew and intended to deprive employees of meal and rest breaks. As a result, Defendant also failed to pay their employees all wages owed during employment under Labor Code § 204. Thus, for the same reasons that the Court should conditionally certify the underlying meal and rest period claims, it should also conditionally certify this derivative claim. *See Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 640 (S.D. Cal. 2010).

**6.    Plaintiff Will Adequately Represent the Interests of the Proposed Settlement Class**

The final Rule 23(a) requirement asks whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied if: (1) the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) Plaintiffs are represented by qualified and competent counsel. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

The Rule 23(a) adequacy requirement is met here as Plaintiff has and will represent putative Class Members with a focus and zeal true to the fiduciary obligation that she has undertaken. Plaintiff's Counsel also satisfies the Rule 23(a)(4) adequacy-of-counsel requirement. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ("will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"). The attorneys at Capstone Law APC have successfully certified numerous class actions by way of contested motion in state and federal court, and have negotiated

settlements totaling over 200 million dollars on behalf of hundreds of thousands of Class Members. (*See* Perez Decl. ¶¶ 46-54, Ex. 6.)

### 7. Class Settlement Is Superior to Other Available Means of Resolution

Resolving all Class Members' claims through a single class action is superior to a series of individual lawsuits. "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023. Indeed, the terms of the Settlement negotiated on behalf of the Class demonstrates the advantages of a collective bargaining and resolution process.

Addressing the allegations through a class action is superior to individual litigation or any alternative methods that may exist. This action was filed precisely because Plaintiff believed those alternatives would have proven ineffective in addressing the problem on a class-wide basis. Additionally, although the value of the claims is not insignificant, the amount in controversy is not nearly enough to incentivize individual action. *See Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this [superiority] factor weighs in favor of class certification."). As the class action device provides the superior means to effectively and efficiently resolve this controversy, and as the other requirements of Rule 23 are each satisfied, certification of the Settlement Class proposed by the Parties is appropriate.

### C. The Proposed Class Action Settlement Should Receive Preliminary Approval

Class action settlements must be approved by the court and notice of the settlement must be provided to the class before the action can be dismissed. Fed. R. Civ. P. 23(e)(1)(A). To protect absent class members' due process rights, approval of class action settlements involves three steps:

1. Preliminary approval of the proposed settlement;

2. Notice to the class providing them an opportunity to exclude themselves; and

3. A final fairness hearing concerning the fairness, adequacy, and reasonableness of the settlement.

*See* Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation § 21.632 (4th ed. 2004).

F.R.C.P. 23(e) provides that if the proposal would bind class members, the Court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

    (A)      the class representatives and class counsel have adequately represented the class;

    (B)      the proposal was negotiated at arm's length;

    (C)      the relief provided for the class is adequate, taking into account:

           (i)      the costs, risks, and delay of trial and appeal;

           (ii)      the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

           (iii)     the terms of any proposed award of attorney's fees, including timing of payment; and

           (iv)     any agreement required to be identified under Rule 23(e)(3); and

    (D)      the proposal treats class members equitably relative to each other.

The judicial policy favoring settlement of class action suits should guide the Court in evaluating the fairness of a settlement. *See Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *see also Hanlon v. Chrysler Corp.*, 150 F.3d at 1027 (endorsing the trial court's "proper deference to the private consensual decision of the parties" when approving a settlement). As this Circuit has observed, "settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial. . . . The economics of litigation are such that pre-trial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process." *Franklin v. Kaypro*, 884 F.2d 1222, 1225 (9th Cir. 1989).

### 1.      The Relief Provided by the Settlement is Fair and Reasonable

At the preliminary approval stage, the Court evaluates whether the settlement is within the "range of reasonableness," and whether notice to the class and the scheduling of a final approval hearing should be ordered. *See generally* 3 Conte & Newberg, *Newberg on Class Actions*, § 7.20 (4th ed. 2002). For preliminary approval, scrutiny of the settlement is reduced. *In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014) ("At the preliminary approval stage, the bar to meet the 'fair, reasonable and adequate' standard is lowered."); *see also, Montoya v. Intelicare Direct, Inc.*, No. 15CV1269-LAB, 2016 WL 4142342 (S.D. Cal. Aug. 4, 2016).

The Court need only review the parties' proposed settlement to determine whether it is within the permissible "range of possible judicial approval" and thus, whether the notice to the class and the scheduling of the formal fairness hearing is appropriate. Newberg, § 11:25. Preliminary approval should be granted if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval. *Ruch v. AM Retail Group, Inc*., 2016 WL 1161453, at *7 (N.D. Cal. Mar. 24, 2016) (quoting *In re Tableware Antitrust Litig.*, 484. F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

### 2.    The Gross Settlement Amount is Within the Range of Reasonableness

As discussed in detail below, an objective evaluation of the Settlement confirms that the relief negotiated on the Class's behalf—a $1,150,000 non-reversionary total Gross Settlement Amount—is fair, reasonable, and valuable. The Settlement was negotiated by the Parties at arm's length with helpful guidance from Mr. Dickstein, and the Settlement confers substantial benefits to Class Members. The relief offered by the Settlement is particularly impressive when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases.

In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court may consider the strength of the plaintiff's case and the amount offered in settlement, among other factors. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Ultimately, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice," and there is no single "formula" to be applied; rather, the Court may presume that the parties' counsel and the mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Rodriguez v. West Pub. Corp*., 563 F.3d 948, 965 (9th Cir. 2009).

Federal district courts recognize that there is an inherent "range of reasonableness" in determining whether to approve a settlement "which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F. 2d 689, 693 (2d Cir. 1972); *see also Nat'l Rural Telecomm. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may

be acceptable even though it amounts to only a fraction of the potential recovery").

| Defendant's Maximum Potential Exposure for the Class Claims | | |
|---|---|---|
| **Claim** | **Explanation** | **Damages/Penalties** |
| Off-the-Clock | ≈ 400,000 shifts worked in aggregate by Class Members × 60% of shifts with off-the-clock violations × $24.62 average overtime rate of pay × 5 minutes off-the-clock | $472,704.00 |
| Meal Periods | ≈ 40,000 shifts with late meal periods × $16.41 average hourly wage. | $656,400.00 |
| Rest Periods | ≈ 250,000 rest period eligible shifts × $16.41 average hourly wage. | $4,102,500.00 |
| Wage Statements | ≈ 35,000 wage statements issued during the 1-year statute of limitations period × $50 penalty. | $1,750,000.00 |
| Final Pay | ≈ 1,100 former employees × 8- hour average shift length × 30 days of penalties × $16.41 average hourly wage × 10% probability of proving willful violation of the Labor Code and absence of good faith defenses. | $433,224.00 |
| **Total** | | **$7,414,828.00** |

Understandably, for purposes of evaluating the settlement's reasonable, the above estimates must be "tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *In re Toys R Us-Delaware, Inc.-- Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453 (C.D. Cal. 2014).

Ultimately, Plaintiff's Counsel determined an appropriate range of recovery for settlement purposes by offsetting Defendant's maximum theoretical liability by: (i) the strength of the defenses to the merits of Plaintiff's claims; (ii) the risk of class certification being denied; (iii) the risk of losing on

any of a number of dispositive motions that could have been brought between certification and trial (e.g., motions to decertify the class, motions for summary judgment, and/or motions in limine) that might have eliminated all or some of Plaintiff's claims, or barred evidence/testimony in support of the claims; (iv) the risk of losing at trial; (v) the chances of a favorable verdict being reversed on appeal; and (vi) the difficulties attendant to collecting on a judgment (collectively, the "Discount Factors").

After taking into account the Discount Factors, Plaintiff's Counsel determined that it would be reasonable to settle for a fraction of Defendant's maximum potential exposure for the class claims (PAGA discussed in the following section), or approximately 16%. Such a discount is inherently reasonable given that Plaintiff would have had to overcome **multiple, dependent** contingencies to prevail on her claims. If anything, the projected odds for each of the above contingencies is generous to the class's position, since plaintiffs in employment cases rarely prevail on **all of the claims** at any of these dispositive stages. Courts routinely approve settlements that provide a similar discounted range of the maximum potential recovery. *See, e.g., Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (approving wage-and-hour class action settlement where gross settlement amount was between 11% and 27% of plaintiffs' potential recovery); *In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231, 256-58 (D. Del. 2002) (recognizing that a reasonable settlement amount can be 1.6% to 14% of the total estimated damages); *In Re Armored Car Antitrust Litig.,* 472 F. Supp. 1357, 1373 (N.D. Ga. 1979) (settlements with a value of 1% to 8% of the estimated total damages were approved); *In Re Four Seasons Secs. Laws Litig.,* 58 F.R.D. 19, 37 (W.D. Okla.1972) (approving 8% of damages); *Balderas v. Massage Envy Franchising, LLP,* 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (finding that settlement which amounted to 8% of maximum recovery "[fell] within the range of possible initial approval based on the strength of plaintiff's case and the risk and expense of continued litigation."); *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement of 6% to 8% of estimated damages).

The instant settlement compares favorably to a previous wage and hour settlement approved by the Northern District of California for comparable wage and hour claims.

| *Ford v. CEC Entertainment, Inc.*, No. 3:14-cv-01420-RS (N.D. Cal.) | |
|---|---|
| Gross Settlement Amount | $2,500,000 |
| Total Number of Class Members | 10,526 |
| Average Class Member Payment | ≈ $150 |
| Final Approval Granted | November 18, 2016 (Judge Richard Seeborg) |

| *Rivas v. BG Retail, LLC*, No. 5:16-cv-06458-BLF (N.D. Cal.) | |
|---|---|
| Gross Settlement Amount | $175,000 |
| Total Number of Class Members | 396 |
| Average Class Member Payment | ≈ $170 |
| Final Approval Granted | January 16, 2020 (Judge Beth Labson Freeman) |

| *Berry v. Urban Outfitters Wholesale, Inc.*, No. 4:13-cv-02628-JSW (N.D. Cal.) | |
|---|---|
| Gross Settlement Amount | $5,000,000 |
| Total Number of Class Members | 12,308 |
| Average Class Member Payment | $255 |
| Final Approval Granted | April 7, 2016 (Judge Jeffrey S. White) |

Notably, whereas the average class member payments in the above settlements ranged from $150 to $255, the average payment here is approximately $470.

**3.    The Settlement Provides for an Equitable Method of Allocating Relief to Class Members**

Payments to Participating Class Members will be made from the Net Settlement Amount. (Settlement Agreement ¶ 64.) The individual allocations will be calculated on a pro-rata basis using the number of weeks worked by each Class Member during the Class Period. *(Id.)* This is a fair and equitable means of apportioning the Net Settlement Fund to Class Members. Class Members who worked for a longer duration during the Class Period will receive proportionally larger payments than those employees who worked for shorter durations.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
5:22-cv-06714-PCP

**4.    There Are No Obvious Deficiencies with the Settlement or Preferential Treatment to Certain Class Members**

The Court must also ask whether "the Settlement contains any obvious deficiencies" and "whether the Settlement provides preferential treatment to any Class Member." *Volkswagen*, 2016 WL 4010049, at **14, 16. This Settlement contains no "glaring deficiencies" *Id*. at *14. The Settlement does not provide for a reversion of unpaid settlement funds to Defendants or distribute a disproportionate share of the settlement to the attorneys that requires closer scrutiny in the Ninth Circuit. *See id*. at *14-15 (applying the factors set forth in *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011)).

Moreover, no segment of the Class is given preferential treatment. Plaintiff will also seek, at a later time (when the Motion for Attorneys' Fees is filed), an incentive award in an amount that is well within the range of such awards in the Ninth Circuit for her work on the behalf of the Class, the reputation risk undertaken, and for the execution of a general release. *See infra*, § III.G. *See, e.g*., *La Fleur v. Medical Management Intern, Inc*., No. 13-00398-VAP, 2014 WL 2967475, *8 (C.D. Cal. June 25, 2014) (awarding $15,000 to each named plaintiff for services to the Class, reputational harm and general release). Accordingly, the Settlement is procedurally fair, adequate and reasonable.

**5.    The Extent of Discovery Completed Supports Preliminary Approval**

As set forth in greater detail in Plaintiff's Counsel's declaration in support of the Motion, based on their analysis of documents and class data produced by Defendant, including Defendant's California labor policies and procedures materials and a sample of Class Members' time records, Plaintiff's Counsel were able to realistically assess the value of Plaintiff's claims and intelligently engage defense counsel in settlement discussions that culminated in the proposed settlement now before the Court. (Perez Decl. ¶¶ 4-7.)

By engaging in a thorough investigation and evaluation of Plaintiff's claims, Plaintiff's Counsel can opine that the Settlement, for the consideration and on the terms set forth in the Settlement Agreement, is fair, reasonable, and adequate, and is in the best interests of Class Members in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation, various defenses asserted by Defendant. (*Id*. at ¶ 8.)

1

**D.    The Court Should Preliminarily Approve the PAGA Settlement**

2    Pursuant to the Settlement Agreement, $60,000 from the Gross Settlement Amount shall be

3    allocated to the resolution of the PAGA claim, of which 75% (i.e., $45,000) will be paid directly to the

4    LWDA, and the remaining 25% (i.e., $15,000) will be paid to PAGA Members. (Settlement Agreement

5    ¶ 65.)

6    This result was reached after good-faith negotiation between the parties. The amount was valued

7    as follows: Based on information and evidence produced by Defendant during discovery, Plaintiff's

8    Counsel determined that aggrieved employees worked a combined total of approximately 35,000 pay

9    periods during the PAGA statute of limitations period ("PAGA Period"). Statutory penalties would be

10   calculated according to Labor Code 2699(f)(2): If, at the time of the alleged violation, the person

11   employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved

12   employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved

13   employee per pay period for each subsequent violation.

14   However, a number of courts have found that the "subsequent" penalty under PAGA applies

15   only after a <u>court</u> or the <u>Labor Commissioner</u> determines that the employer has violated the Labor Code.

16   *See Gunther v. Alaska Airlines, Inc.*, 72 Cal. App. 5th 334, 356 (2021) ("the increased $200 civil penalty

17   for 'subsequent violation[s]' does not apply unless [Plaintiff] presents evidence that the Labor

18   Commission or a court notified [Defendant] that it was in violation of the Labor Code."); *Bernstein v.*

19   *Virgin Am., Inc.*, 990 F.3d 1157, 1173 (9th Cir. 2021) (reversing judgment as to "heightened civil

20   penalties" because the defendant was not given notice by the Labor Commissioner when the

21   "subsequent" violations occurred). Under this line of cases, Defendant's exposure would be

22   approximately $3,500,000 = 35,000 violative pay periods × $100.

23   It should be noted that PAGA gives the Court wide latitude to reduce the amount of civil

24   penalties "based on the facts and circumstances of a particular case" when "to do otherwise would result

25   in an award that is unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(h). In

26   reducing PAGA penalties, courts have considered issues including whether the employees suffered

27   actual injury from the violations, whether the defendant was aware of the violations, and the employer's

28   willingness to fix the violation. *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 528 (2018)

1  (awarding PAGA penalties of only 0.2% of the maximum); *see also Cotter v. Lyft, Inc.*, 193 F. Supp. 3d

2  1030, 1037 (N.D. Cal. 2016); *Fleming v. Covidien Inc.*, No. ED CV 10-01487 RGK (OPX), 2011 WL

3  7563047, at *4 (C.D. Cal. Aug. 12, 2011).

4          For example, during the penalty phase of trial in *Carrington*, the plaintiff requested PAGA

5  penalties in the amount of approximately $70 million. The trial court instead awarded only $150,000—

6  **or 0.21% of the maximum**—and stated that this reduction was warranted because (a) the Court did not

7  believe it was appropriate to impose multiple penalties per pay period in which a violation occurred and

8  (b) imposing the maximum penalty would be "unjust, arbitrary, and oppressive" based on Starbucks's

9  "good faith attempts" to comply with meal period obligations and because the court found the violations

10  were minimal. *Carrington*, 30 Cal. App. 5th at 517-18. The Court of Appeal affirmed the lower court's

11  reduced award of a $150,000 penalty under PAGA. *Id.* at 529. If a similar reduction had been applied

12  here, Plaintiff would have recovered only approximately $7,350 ($3,500,000 × 0.0021 reduction).

13          Likewise, in *Covidien*, the Court reduced the potential penalties by over 82%, awarding

14  $500,000 instead of maximum penalties of $2.8 million. *Covidien*, 2011 WL 7563047 at *4; *see also*

15  *Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112, 1135-36 (2012) (affirming 30% reduction

16  under specified PAGA claim where the employer produced evidence that it took its obligations

17  seriously); *Elder v. Schwan Food Co.*, No. B223911, 2011 WL 1797254, at *5-*7 (Cal. Ct. App. May

18  12, 2011) (reversing trial court decision denying any civil penalties where violations had been proven,

19  remanding for the trial court to exercise discretion to reduce, but not wholly deny, civil penalties); *Li v. A*

20  *Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2012 WL 2236752, at *17 (N.D. Cal. June 15,

21  2012) (denying PAGA penalties for violation of California Labor Code section 226 as redundant with

22  recovery on a class basis pursuant to California Labor Code section 226, directly); *Aguirre v. Genesis*

23  *Logistics*, No. SACV 12-00687 JVS (ANx), 2013 WL 10936035 at *2-*3 (C.D. Cal. Dec. 30, 2013)

24  (reducing penalty for past PAGA violations from $1.8 million to $500,000, after rejecting numerous

25  other PAGA claims).

26          Plaintiff therefore determined an appropriate range of settlement for PAGA penalties as a

27  percentage of the settlement range that was consistent with other hybrid class/PAGA settlements

28  approved by California courts. *Dearaujo v. Regis Corp.*, No. 2:14-cv-01408-KJM-AC, 2016 WL

1  3549473 at *3 (E.D. Cal. June 29, 2016) (preliminarily approving $1.95 million settlement containing

2  $10,000 PAGA penalties with $7,500 paid to LWDA); *Garcia v. Gordon Trucking, Inc.*, No. 1:10–CV–

3  0324 AWI SKO, 2012 WL 5364575 at *7 (E.D. Cal. Oct. 31, 2012) (approving $3.7 million settlement

4  containing $10,000 PAGA penalties with $7,500 paid to LWDA); *Chu v. Wells Fargo Invst., LLC*, No.

5  C 05–4526 MHP, 2011 WL 672645 at *1 (N.D. Cal Feb. 16, 2011) (approving $6.9 million settlement

6  containing $10,000 PAGA penalties with $7,500 paid to LWDA); *Guerrero v. R.R. Donnelley & Sons

7  Co.*, Case No. RIC 10005196 (Riverside County Super. Ct. July 16, 2013; Judge Matthew C. Perantoni)

8  (gross settlement fund of $1,100,000, of which $3,000 (or 0.3%) was allocated to the settlement of

9  PAGA penalties); Parra v. Aero Port Services, Inc., No. BC483451 (L.A. County Super. Ct. April 20,

10  2015; Judge Jane Johnson) (gross settlement fund of approximately $1,458,900, of which $5,000 (or

11  0.3%) was allocated to the settlement of PAGA penalties)

12       Where PAGA penalties are negotiated in good faith and "there is no indication that [the] amount

13  was the result of self-interest at the expense of other Class Members," such amounts are generally

14  considered reasonable. *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, at *9

15  (N.D. Cal. Apr. 3, 2009); *see, e.g.*, *Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 579 (2010) ("[T]rial

16  court did not abuse its discretion in approving a settlement which does not allocate any damages to the

17  PAGA claims.").

18       **E.     The Court Should Preliminarily Approve the Negotiated Attorneys' Fees and**

19            **Costs**

20       At final approval, Class Counsel will request attorneys' fees in the amount of one-third of the

21  total common fund. Under controlling California law, the common fund method for awarding attorneys'

22  fees is appropriate where, as here, attorneys have been instrumental in creating a settlement fund that

23  benefits all class members. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (the

24  state law governing the underlying claims in a diversity action "also governs the award of fees");

25  *Serrano v. Priest*, 20 Cal. 3d 25, 35 (1977) (noting that federal and state courts have long recognized that

26  when attorneys create a common fund that benefits a class, the attorneys have an equitable right to be

27  compensated from that fund); *Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19, 48 (2000) ("Courts

28  agree that, because the percentage-of-the-benefit approach is 'results oriented rather than process-

1 oriented, it better approximates the workings of the marketplace' than the lodestar approach." [citation
2 omitted]).

3    Although California has no benchmark, California courts routinely award attorneys' fees
4 equalling approximately one-third of the common fund's total potential value or higher. *Amaro v.*
5 *Anaheim Arena Mgmt., LLC*, 69 Cal. App. 5th 521, 545 (2021) ("fee awards in class actions average
6 around one-third of the recovery regardless of whether the percentage method or the lodestar method is
7 used.") (internal quotations omitted); *Laffitte v. Robert Half Internat. Inc.*, 231 Cal. App. 4th 860, 871
8 (2016) ("33 1/3 percent of the common fund is consistent with, and in the range of, awards in other class
9 action lawsuits"); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008) ("Empirical studies show that,
10 regardless whether the percentage method or the lodestar method is used, fee awards in class actions
11 average around one-third of the recovery.").

12    Plaintiff will file a formal motion for the negotiated attorneys' fees and costs once preliminary
13 approval of the Settlement is granted.

14    **F.    The Court Should Preliminarily Approve the Negotiated Class Representative**
15         **Incentive Payment**

16    The Settlement provides for a Class Representative Incentive Payment of $10,000 to Plaintiff for
17 her service on behalf of Class Members and for agreeing to a broader release than those required of other
18 Class Members. "Incentive awards are fairly typical in class action cases . . . Such awards are
19 discretionary and are intended to compensate class representatives for work done on behalf of the class . .
20 . ." *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 958 (9th Cir. 2009) (citing 4 *William B. Rubenstein et*
21 *al.*, *Newberg on Class Actions* § 11:38 (4th ed. 2008)). These payments work both as an inducement to
22 participate in the suit and as compensation for time spent in litigation activities. *See In re Mego Fin.*
23 *Corp. Sec. Litig.*, 213 F.3d at 463 (describing the service award as an incentive to the class
24 representatives); *Matter of Continental Illinois Securities Litig.*, 962 F.2d 566, 571 (7th Cir.
25 1992) (stating that an enhancement award should be in such an amount "as may be necessary to induce
26 [the class representative] to participate in the suit").

27    Plaintiff will file a formal motion for the negotiated Class Representative Incentive Payment
28 once preliminary approval of the Settlement is granted.

1

## IV.    CONCLUSION

2          The Parties have negotiated a fair and reasonable settlement of claims. Having appropriately

3    presented the materials and information necessary for preliminarily approval, the Parties request that the

4    Court preliminarily approve the settlement.

5

6    Dated: October 10, 2024                    Respectfully submitted,

7

8                                        By:  /s/ Bevin Allen Pike
                                              Raul Perez
9                                              Bevin Allen Pike
                                              Daniel Jonathan
10                                             Trisha K. Monesi
                                              **CAPSTONE LAW APC**
11
                                              Attorney for Plaintiff Shania Cole
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28