1   Raul Perez (SBN 174687)
    Raul.Perez@capstonelawyers.com
2   Bevin Allen Pike (SBN 221936)
    Bevin.Pike@capstonelawyers.com
3   Daniel Jonathan (SBN 262209)
    Daniel.Jonathan@capstonelawyers.com
4   Trisha K. Monesi (SBN 303512)
    Trisha.Monesi@capstonelawyers.com
5   CAPSTONE LAW APC
    1875 Century Park East, Suite 1860
6   Los Angeles, California 90067
    Telephone:     (310) 556-4811
7   Facsimile:      (310) 943-0396

8   Attorneys for Plaintiff Shania Cole

9                    UNITED STATES DISTRICT COURT

10            FOR THE NORTHERN DISTRICT OF CALIFORNIA

11  SHANIA COLE, individually, and on behalf of    Case No.: 5:22-cv-06714-PCP
    other members of the general public similarly
12  situated, and as an aggrieved employee pursuant   Assigned to the Hon. P. Casey Pitts
    to the Private Attorneys General Act ("PAGA"),
13                                                    **NOTICE OF MOTION AND MOTION FOR**
                     Plaintiff,                       **ATTORNEYS' FEES, COSTS, AND A CLASS**
14                                                    **REPRESENTATIVE INCENTIVE**
           vs.                                        **PAYMENT; MEMORANDUM OF POINTS**
15                                                    **AND AUTHORITIES**
    LANE BRYANT, INC., a Delaware
16  corporation; LANE BRYANT BRANDS                   Date:       November 20, 2025
    OPCO LLC, an Ohio limited liability company;      Time:       10:00 a.m.
17  LANE BRYANT #6243, INC., a Florida                Place:      Courtroom 8
    corporation; and DOES 1 through 10, inclusive,
18
19                   Defendants.
20
21
22
23
24
25
26
27
28

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 20, 2025, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 8 of the above-captioned court, located at 280 South First Street, San Jose, California 95113, the Honorable P. Casey Pitts presiding, Plaintiff Shania Cole will, and hereby does, move this Court to award $383,333 in attorneys' fees and $25,000 in litigation costs. Plaintiff also moves for a Class Representative Incentive Payment for her service on behalf of the Settlement Class, and for a general release of all claims she may have against Defendant Lane Bryant Brands Opco LLC, arising out of her employment.

This Motion should be granted because: (1) no action would likely have been taken by Class Members individually, and no compensation would have been recovered for them, but for Plaintiff's service on their behalf; (2) the requested attorneys' fees and costs are fair and reasonable based on the work performed and the results obtained for the class; (3) public policy recognizes that attracting competent counsel to litigate cases on behalf of clients unable to pay hourly fees requires attorney fee awards commensurate with such risks; and (4) the Class's response confirms that the requested attorneys' fees and costs/expenses and Class Representative Incentive Payment should be approved.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of the Motion for Attorneys' Fees, Costs, and a Class Representative Incentive Payment; (3) the Declaration of Raul Perez; (4) the Declaration of Shania Cole; (5) the [Proposed] Order; (6) the records, pleadings, and papers filed in this action; and (7) upon such other documentary and/or oral evidence as may be presented to the Court at the hearing.

Dated: August 29, 2025                     Respectfully submitted,

                              By:  /s/ Bevin Allen Pike
                                   Raul Perez
                                   Bevin Allen Pike
                                   Daniel Jonathan
                                   Trisha K. Monesi
                                   **CAPSTONE LAW APC**

                                   Attorney for Plaintiff Shania Cole

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

II.   ARGUMENT .................................................................................................................. 2

    A.   Plaintiff's Request for Attorneys' Fees Should Be Evaluated Under a Deferential
        Standard ................................................................................................................. 2

    B.   Plaintiff's Request for Attorneys' Fees in the Amount of One-Third of the Common
        Fund Is Reasonable Under Controlling California Law ......................................... 3

    C.   Plaintiff's Request for Attorneys' Fees in the Amount of One-Third of the Common
        Fund Is Also Reasonable Under Ninth Circuit Precedent ..................................... 4

    D.   Other Factors Support Plaintiff's Fee Request .................................................... 6

        1.   The Results of the Litigation Support the Requested Fees ............................... 6

        2.   The Substantial Contingent Risk, Including the Risk of Further Litigation,
            Supports the Requested Fees ........................................................................... 7

        3.   The Skill of Counsel and Work Performed Support the Requested Fees ..................... 9

        4.   A Lodestar Cross-Check Confirms that the Requested Fees Are Fair and
            Reasonable ..................................................................................................... 10

    E.   Plaintiff's Counsel's Out-Of-Pocket Costs Should Be Reimbursed ..................... 13

    F.   The Class Representative Incentive Payment is Fair and Reasonable ................... 13

III.  CONCLUSION ............................................................................................................ 16

1                                   **TABLE OF AUTHORITIES**

2

3    **STATE CASES**

4    *Ali v. U.S.A. Cab Ltd.*, 176 Cal. App. 4th 1333 (2009)............................................................... 9

5    *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157 (2008) ................................................ 12

6    *Amaro v. Anaheim Arena Mgmt., LLC*, 69 Cal. App. 5th 521 (2021) .................................. 1, 3

7    *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008)............................................................. 1, 3

8    *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545 (2009) .............................................. 10

9    *Kerkeles v. City of San Jose*, 243 Cal. App. 4th 88 (2015) .................................................... 11

10   *Ketchum v. Moses*, 24 Cal. 4th 1122 (2001)........................................................................ 7, 8

11   *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480 (2016)........................................................ 3, 4

12   *Laffitte v. Robert Half Int'l Inc.*, 231 Cal. App. 4th 860 (2014)........................................... 1, 3

13   *Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19 (2000) .................................................. 4, 7

14   *PLCM Group v. Drexler*, 22 Cal. 4th 1084 (2000) ................................................................ 10

15   *Spann v. J.C. Penney Corp.*, No. 12-0215-FMO, 2016 WL 5844606 (C.D. Cal. Sept. 30,

16       2016)................................................................................................................................ 13

17   *Sutter Health Uninsured Pricing Cases*, 171 Cal. App. 4th 495 (2009) ............................... 11

18   *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224 (2001)............................................ 11

19

20   **FEDERAL CASES**

21   *Billinghausen v. Tractor Supply Co.,* 306 F.R.D. 245 (N.D. Cal. 2015) ............................14, 16

22   *Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453 (S.D. Cal. 2007) ..................................... 9

23   *Brown v. Fed. Express Corp.,* 249 F.R.D. 580 (C.D. Cal. 2008) .............................................. 9

24   *Campbell v. Best Buy Stores, L.P.*, No. LA CV12-07794 JAK, 2013 WL 5302217 (C.D.

25       Cal. Sept. 20, 2013)............................................................................................................. 9

26   *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)......................................... 6

27   *City of Burlington v. Dague*, 505 U.S. 557 (1992).................................................................. 9

28   *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326 (N.D. Cal. 2014) ....................................... 11

MOTION FOR ATTORNEYS' FEES, COSTS, AND A CLASS REPRESENTATIVE INCENTIVE PAYMENT
5:22-cv-07614-PCP

*Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM SHX, 2008 WL
   8150856 (C.D. Cal. July 21, 2008) ............................................................................. 4

*Glass v. UBS Financial Services, Inc*., No. 06-4066-MMC, 2007 WL 221862 (N.D. Cal.
   Jan. 26, 2007) ............................................................................................................... 12

*Gonzalez v. Officemax N. Am.*, SACV 07–00452 JVS (MLGx), 2012 WL 5473764 (C.D.
   Cal. Nov. 5, 2012) ......................................................................................................... 9

*In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989) ........................................ 5

*In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 WL
   4820784 (N.D. Cal. Nov. 5, 2008) ............................................................................... 3

*In re Bluetooth Headset Products Liab. Litig.,* 654 F.3d 935 (9th Cir. 2011) ..................... 5

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...................... 13

*In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ........................................... 6

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA)*
   *Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014) .................................................................... 15

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ......... 4

*Jimenez v. Allstate Ins. Co.*, 2012 WL 1366052 (C.D. Cal. Apr. 18, 2012) ...................... 9

*Johnson v. Gen. Mills, Inc.*, No. SACV 10-00061-CJC, 2013 WL 3213832 (C.D. Cal.
   June 17, 2013) ............................................................................................................. 13

*Kang v. Wells Fargo Bank, N.A.*, 2021 WL 5826230 (N.D. Cal. Dec. 8, 2021) ............... 11

*Kenny v. Supercuts, Inc.*, 252 F.R.D. 641 (N.D. Cal. 2008) ............................................... 9

*La Fleur v. Medical Management Intern, Inc*., No. 13-00398-VAP, 2014 WL 2967475
   (C.D. Cal. June 25, 2014) ............................................................................................ 16

*Lazarin v. Pro Unlimited, Inc.*, No. C11–03609 HRL, 2013 WL 3541217 (N.D. Cal. July
   11, 2013) ....................................................................................................................... 12

*Leyva v. Medline Indus.*, 716 F.3d 510 (9th Cir. 2013) ....................................................... 7

*Lopez v. Youngblood*, No. 07-0474-DLB, 2011 WL 10483569 (E.D. Cal. Sep. 2, 2011) ....... 12

*Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470 (9th Cir. 1995) ......................... 3

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008) .......................................... 11

*Ordonez v. Radio Shack, Inc.*, No. CV 10-7060-CAS JCGX, 2013 WL 210223 (C.D.

Cal. Jan. 17, 2013)...................................................................................................... 9

*Pokorny v. Quixtar, Inc.*, No. C 07-0201 SC, 2013 WL 3790896 (N.D. Cal. July 18,

2013).......................................................................................................................... 5

*Schaffer v. Litton Loan Servicing, LP*, No. CV 05-07673 MMM JCX, 2012 WL

10274679 (C.D. Cal. Nov. 13, 2012)........................................................................ 15

*Trs. of the Constr. Indus. and Laborers Health and Welfare Trust v. Redland Ins. Co.*,

460 F.3d 1253 (9th Cir. 2006) .................................................................................. 13

*Uschold v. NSMG Shared Servs., LLC*, 2020 WL 3035776 (N.D. Cal. June 5, 2020)............................ 12

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) ............................... 15

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ...............................................3, 5, 11

**SECONDARY AUTHORITIES**

Alba Conte & Herbert Newberg, Newberg on Class Actions (4th ed. 2002) ................................. 1

Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee

Award*, 7 J. Empirical Legal Stud. 811, 833 (2010) ................................................... 6

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements:

An Empirical Study*, J. of Empirical Legal Studies, Vol. 1, Issue 1, 27, March 2004 ............................. 4

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I.    INTRODUCTION

3

4

5

6

7

8

Plaintiff Shania Cole brought this action to secure important workplace protections—payment of minimum and overtime wages, and relief to take meal and rest breaks—for current and former employees of Defendant Lane Bryant Brands Opco LLC ("Defendant") (collectively with Plaintiff, the "Parties"). Despite the risk and uncertainty associated with litigating the claims, Plaintiff secured a $1,150,000 **non-reversionary settlement** that will provide timely monetary relief to over 1,420 workers.

9

10

11

12

13

Having obtained valuable relief for the Settlement Class, Plaintiff seeks an award of attorneys' fees in the amount of $383,333, or one-third of the total non-reversionary settlement fund. The requested award is fair, reasonable, and appropriate under the California and Ninth Circuit common fund doctrines in light of the favorable results obtained by Plaintiff's Counsel, the complexities of the litigation, and the contingent risk that Plaintiff's Counsel assumed in litigating the case.

14

15

16

17

18

19

20

21

22

Under California law, which governs this fee request, the percentage of the fund requested is consistent with fee awards in similar cases. *See, e.g.*, *Laffitte v. Robert Half Int'l Inc.*, 231 Cal. App. 4th 860, 871 (2014) ("*Laffitte I*") ("33 1/3 percent of the common fund is consistent with, and in the range of, awards in other class action lawsuits"); *Amaro v. Anaheim Arena Mgmt., LLC*, 69 Cal. App. 5th 521, 545 (2021) ("fee awards in class actions average around one-third of the recovery" regardless of "whether the percentage method or the lodestar method is used."); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008) ("[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery"); Conte & Newberg, *Newberg on Class Actions* (4th ed. 2002) (same).

23

24

25

26

27

Other factors support this fee request. As discussed in more detail in the Motion for Preliminary Approval of Amended Class Action and PAGA Settlement (*see* Dkt. No. 43), Plaintiff's Counsel delivered significant results to the Settlement Class in the face of adverse conditions, and assumed substantial risk in litigating this action on a contingency basis, having invested over 350 hours of their time toward the zealous prosecution of the class's claims.

28

In addition to attorneys' fees, Plaintiff's Counsel also seek reimbursement for their litigation

1  costs in the amount of $25,000. These costs were necessarily incurred in connection with the prosecution

2  and settlement of the action, are of the kind that would typically be paid by a fee-paying client, and are

3  thus reimbursable.

4        Lastly, Plaintiff also moves for a Class Representative Incentive Payment of $10,000 for her

5  service on behalf of the Settlement Class, and for agreeing to a broader release than those required of

6  other Class Members.

7        For these and the reasons set forth in greater detail below, Plaintiff respectfully submits that the

8  requested attorneys' fees, costs, and Class Representative Incentive Payment are fair and reasonable, and

9  should be approved.

10  **II.     ARGUMENT**

11       **A.     Plaintiff's Request for Attorneys' Fees Should Be Evaluated Under a Deferential**

12            **Standard**

13        Courts have encouraged litigants to resolve fee issues by agreement. *See Hanlon v. Chrysler*

14  *Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). This is consistent with the strong public policy of

15  encouraging and approving non-collusive settlements, including those in class actions, and avoiding a

16  "second major litigation" arising from a request for attorneys' fees after the matter has been resolved.

17  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a

18  fee").

19        In light of the policy favoring settlement of fee disputes, district courts must account for the fact

20  that "the parties are compromising precisely to avoid litigation[.]" *Laguna v. Coverall North America*,

21  753 F.3d 918, 922 (9th Cir. 2014), *vac'd on other grounds*, 2014 U.S. App. LEXIS 21950 (9th Cir.

22  2014). Accordingly, the Ninth Circuit holds that "the court need not inquire into the reasonableness of

23  the fees even at the high end with precisely the same level of scrutiny as when the fee amount is

24  litigated." *Id.* (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 966 (9th Cir. 2003) (internal quotations

25  omitted). Thus, while the Court must conduct an independent inquiry into the reasonableness of the fee

26  request, it should give substantial weight to the parties' agreement as to the reasonableness of the amount

27  of attorneys' fees.

28        These considerations are particularly appropriate where, as here, the parties negotiated the

1  settlement at arm's-length with the guidance of an experienced mediator. *In re Apple Computer, Inc.*

2  *Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 WL 4820784, at *3 (N.D. Cal. Nov. 5, 2008)

3  (mediator's participation weighs considerably against any inference of a collusive settlement); *D'Amato*

4  *v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement

5  negotiations helps to ensure that the proceedings were free of collusion and undue pressure.").

6      The settlement negotiations were adversarial and non-collusive, and the resulting settlement of

7  attorneys' fees, as a function of the overall settlement's value, is likewise fair, reasonable, and free of

8  collusion.

9      **B.    Plaintiff's Request for Attorneys' Fees in the Amount of One-Third of the**

10     **Common Fund Is Reasonable Under Controlling California Law**

11     In diversity actions, federal courts must apply state law to determine whether a party has a right

12  to attorneys' fees, and if so, how to calculate those fees. *Mangold v. Calif. Public Utilities Comm'n*, 67

13  F.3d 1470, 1478 (9th Cir. 1995) ("Ninth Circuit precedent has applied state law in determining not only

14  the right to fees, but also in the method of calculating the fees"). The state law governing the underlying

15  claims in a diversity action "also governs the award of fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d

16  1043, 1047 (9th Cir. 2002).

17     As reinforced recently by the California Supreme Court, California law expressly authorizes the

18  percentage method for awarding attorneys' fees in common fund cases. *See Laffitte v. Robert Half Int'l*

19  *Inc.*, 1 Cal. 5th 480, 503 (2016) ("*Laffitte II*") (joining other jurisdictions in holding that the trial court

20  "may determine the amount of a reasonable fee by choosing an appropriate percentage of the fund

21  created"). California—by choice—has no benchmark. *See Laffitte II*, 1 Cal. 5th at 495 (recognizing the

22  Ninth Circuit's benchmark of 25%, but not adopting a benchmark for California). Instead, California

23  courts have routinely awarded attorneys' fees equalling thirty percent or more of the common fund's

24  total potential value. *See, e.g., Laffitte I*, 231 Cal. App. 4th at 871 ("33 1/3 percent of the common fund is

25  consistent with, and in the range of, awards in other class action lawsuits"); *Amaro*, 69 Cal. App. 5th at

26  545 ("fee awards in class actions average around one-third of the recovery" regardless of "whether the

27  percentage method or the lodestar method is used."); *Chavez*, 162 Cal. App. 4th at n.11 (accord);

28  Eisenberg & Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, J. of Empirical

1   Legal Studies, Vol. 1, Issue 1, 27-78, March 2004, at 35 (independent studies of class action litigation

2   nationwide conclude that fees representing one-third of the total recovery is consistent with market rates).

3   Notably, the California Supreme Court in *Laffitte II*, affirmed a fee award representing one-third of a

4   non-reversionary fund. *See id.* at 506.

5       A fee award in the amount of one-third of the common fund is also reasonable because it best

6   reflects the market rate for contingency fees. *See Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19, 47

7   (2000) ("attorneys providing the essential enforcement services must be provided incentives roughly

8   comparable to those negotiated in the private bargaining that takes place in the legal marketplace"). This

9   is because such a request reflects the rate negotiated in "typical contingency fee agreements [which]

10  provide that class counsel will recover 33% if the case is resolved before trial and 40% if the case is

11  tried." *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM SHX, 2008 WL 8150856, at

12  *16 (C.D. Cal. July 21, 2008) (citing an academic study collecting contingency fee agreements and

13  finding that a fee award constituting 34% of the fund is reasonable on that basis). Because the negotiated

14  fee structure mimics the marketplace, it is reasonable and should be approved.

15      **C.    Plaintiff's Request for Attorneys' Fees in the Amount of One-Third of the**

16          **Common Fund Is Also Reasonable Under Ninth Circuit Precedent**

17      Although this motion is governed by California law, Plaintiff's fee request is also reasonable

18  under federal law. The Supreme Court has consistently recognized that "a litigant or a lawyer who

19  recovers a common fund for the benefit of persons other than himself or his client is entitled to a

20  reasonable attorney's fee from the fund as a whole." *Boeing Company v. Van Gemert*, 444 U.S. 472, 478

21  (1980). The purpose of this doctrine is that "those who benefit from the creation of the fund should share

22  the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply*

23  *Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994).

24      The federal common fund doctrine applies when: (1) the class of beneficiaries is sufficiently

25  identifiable; (2) the benefits can be accurately traced; and (3) the fee can be shifted with some exactitude

26  to those benefitting. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989). These

27  criteria are "easily met" where, as here, "each [class member] has an undisputed and mathematically

28  ascertainable claim to part of a lump-sum settlement recovered on his behalf." *Id.* (*citing Van Gemert*,

1    444 U.S. at 479).

2          District courts presiding over common fund cases have the discretion to award attorneys' fees

3    based on either the lodestar method (essentially a modification of hourly billing) or the percentage

4    method proposed here. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1296. Where, as here,

5    fees are requested from a certain and calculable common fund, the percentage-of-the-fund method is

6    appropriate. *See In re Bluetooth Headset Products Liab. Litig.,* 654 F.3d 935, 942 (9th Cir. 2011).

7    Indeed, in *Bluetooth*, the court recognized that one important advantage of the common fund method is

8    that fees are "easily quantified," making a fee determination simpler than the "often more time-

9    consuming task of calculating the lodestar." *In re Bluetooth*, 654 F.3d at 942; *see also Swedish Hosp.*

10   *Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) ("a percentage-of-the-fund approach is less

11   demanding of scarce judicial resources than the lodestar method").

12         In non-diversity actions, the Ninth Circuit has established 25% of a common fund as a

13   "benchmark" award for attorney fees. *Vizcaino*, 290 F.3d at 1047. However, the Ninth Circuit states that

14   the benchmark is the "starting point for analysis" and notes that "it may be inappropriate in some cases."

15   *Id.* at 1048. The "[s]election of the benchmark or any other rate must be supported by findings that take

16   into account all of the circumstances of the case." *Id.* The district court's duty is to not presume

17   benchmark percentage applies, but simply "whether in arriving at its percentage it considered all the

18   circumstances of the case and reached a reasonable percentage." *Id.*

19         Thus, the "exact percentage [awarded] varies depending on the facts of the case, and **in most**

20   **common fund cases, the award exceeds that benchmark**." *Vasquez v. Coast Valley Roofing, Inc.*, 266

21   F.R.D. 482, 491 (E.D. Cal. 2010) (emphasis added); *In re Activision Sec. Litig.*, 723 F. Supp. at 1377

22   ("[a] review of recent reported cases discloses that nearly all common fund awards range around

23   30%...."); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) (in "most common fund

24   cases, the award exceeds that benchmark"); *Pokorny v. Quixtar, Inc.*, No. C 07-0201 SC, 2013 WL

25   3790896, at *1 (N.D. Cal. July 18, 2013) (the "Ninth Circuit uses a 25% baseline in common fund class

26   actions, and in most common fund cases, the award exceeds that benchmark, with a 30% award the

27   norm absent extraordinary circumstances that suggest reasons to lower or increase the percentage.")

28   (internal quotation marks omitted).

District courts within the Ninth Circuit routinely award attorneys' fees of one-third or more of the common fund, particularly for wage and hour class action settlements. Awards of one-third are likewise routinely upheld by the Ninth Circuit. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming one-third of the common fund); *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming one-third of a $12 million common fund).

A fee award representing one-third of the fund falls within the range of other comprehensive surveys of class action settlements and fee awards. *See* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Award*, 7 J. Empirical Legal Stud. 811, 833 (2010) (analyzing 444 cases between 2006-2007 and concluding that "[m]ost fee awards were between 25 percent and 35 percent, with almost no awards more than 35 percent.").

Accordingly, Plaintiff's request for attorneys' fees in the amount of $383,333, or one-third of the $1,150,000 common fund, is consistent with established Ninth Circuit precedent.

### D.       Other Factors Support Plaintiff's Fee Request

In addition to the results achieved and awards in comparable cases, courts in this Circuit have also considered additional factors when evaluating the fairness of the award. These factors include: (1) the risks of further litigation; (2) the contingent nature of the fee; (3) the skill of the attorneys; and (4) a lodestar cross-check. *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). While no single factor is determinative of reasonableness, each factor supports Plaintiff's request for attorneys' fees in the amount of one-third of the common fund.

#### 1.       The Results of the Litigation Support the Requested Fees

By taking action to enforce labor laws, Plaintiff and Plaintiff's Counsel have vindicated the rights of over 1,420 workers and have secured $1,150,000 in relief for their claims. The relief offered by the settlement is particularly valuable when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases (*see* Motion for Preliminary Approval). Indeed, the Ninth Circuit has recognized that complex litigation is often necessary to effectively enforce workplace protection legislation:

> The California Labor Code protects all workers regardless of their immigration status or financial resources . . . In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the

only feasible means for them to adjudicate their claims.

*Leyva v. Medline Indus.*, 716 F.3d 510, 515 (9th Cir. 2013). By obtaining a significant recovery for the class, Plaintiff's Counsel have vindicated the rights of workers and enforced compliance with important workplace regulations.

Additionally, the public interest served by the lawsuit likewise supports the requested award of attorneys' fees. In *Lealao*, 82 Cal. App. 4th 19, the court held that in determining the appropriate award of attorneys' fees, the trial court should consider the need to encourage the private enforcement necessary to vindicate many legal rights, as well as the role that representative actions play in relieving the courts of the need to separately adjudicate numerous claims.

Given the result, this action will undoubtedly deter other similarly situated employers from taking advantage of their employees. In a related vein, unless competent attorneys are fully compensated when they take on large corporate defendants, unlawful practices at issue here will likely go unchecked.

### 2.    The Substantial Contingent Risk, Including the Risk of Further Litigation, Supports the Requested Fees

The contingent risk that Plaintiff's Counsel assumed in prosecuting the action supports the requested attorneys' fees and costs. Plaintiff's Counsel took this case on a pure contingency basis, and had no guarantee that they would receive any remuneration for the many hours (over 350) they spent litigating the class's claims, or for the $33,273.37 in out-of-pocket costs they reasonably incurred to date.

Large-scale litigation of this type is, by its very nature, complicated and time-consuming. Any law firm undertaking representation of a large number of affected employees in wage and hour actions inevitably must be prepared to make a significant investment of time, energy, and resources. Due also to the contingent nature of the customary fee arrangement, lawyers must be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee recovery of any kind. As the Ninth Circuit has recognized, "attorneys whose compensation depends on their winning the case[ ] must make up in compensation in the cases they win for the lack of compensation in the cases they lose." *Vizcaino*, 290 F.3d at 1051.

The demands and risks of this type of litigation overwhelm the resources—and deter participation—of many traditional claimants' firms. For these reasons, California courts and the Ninth

Circuit recognize a need to reward plaintiffs' counsel who accept cases on a pure contingency basis. In *Ketchum v. Moses*, 24 Cal. 4th 1122 (2001), the California Supreme Court instructed courts to upwardly adjust fee compensation to ensure that the fees account for contingency risk:

> A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases.

*Ketchum*, 24 Cal. 4th at 1133.

Similarly in *In re Washington Pub. Power Supply*, the Ninth Circuit underscored the importance of rewarding attorneys who take cases on a contingency basis:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. See Richard Posner, Economic Analysis of Law § 21.9, at 534–35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*In re Washington Pub. Power Supply.*, 19 F.3d at 1299, 1300-01 ("in the common fund *context*, attorneys whose compensation depends on their winning the case, must make up in compensation in the cases they win for the lack of compensation in the cases they lose.").

As reflected in *Ketchum* and *In re Washington*, attorneys accepting contingent fee cases should be compensated in amounts greater than those earned by attorneys who bill and receive payment by the hour, as this fact reflects the risks undertaken in a contingent practice. If a contingent-fee attorney were awarded fees at the same level as an hourly-fee attorney, it would be economically irrational for any attorney to accept a contingent-fee case because there would be absolutely no incentive to accept the risks inherent in such representation.

Apart from the general risks attendant to contingency litigation, Plaintiff's Counsel here assumed considerable additional risk. For example, although a number of cases have found wage and hours actions to be especially amenable to class resolution, other courts have raised the bar for certifying such cases, finding that some of the very claims at issue here were not suitable for class adjudication because they raised too many individualized issues. *See Ali v. U.S.A. Cab Ltd.*, 176 Cal. App. 4th 1333, 1341

(2009) (denying certification because employees' declarations attesting to having taken meal and rest breaks demonstrated that individualized inquiries were required to show harm); *Campbell v. Best Buy Stores, L.P.*, No. LA CV12-07794 JAK, 2013 WL 5302217 (C.D. Cal. Sept. 20, 2013) (following *Brinker* and denying certification of proposed off-the-clock and rest and meal break classes due to lack of uniform policy); *Jimenez v. Allstate Ins. Co.*, LA CV10–08486 JAK (FFMx), 2012 WL 1366052 (C.D. Cal. Apr. 18, 2012) (denying motion to certify meal and rest break classes based on employer's practice of understaffing and overworking employees); *Gonzalez v. Officemax N. Am.*, SACV 07–00452 JVS (MLGx), 2012 WL 5473764 (C.D. Cal. Nov. 5, 2012) (same); *Brown v. Fed. Express Corp.,* 249 F.R.D. 580, 587-88 (C.D. Cal. 2008) (denying certification of driver meal and rest period claims based on the predominance of individual issues); *Kenny v. Supercuts, Inc.*, 252 F.R.D. 641, 645 (N.D. Cal. 2008) (denying certification on meal periods claim); *Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453, 467-68 (S.D. Cal. 2007) (declining to certify class action because individual issues predominated when different employee stations provided different practices with respect to meal periods).

Some courts have denied certification even when an employer's policies are unlawful on their face. For instance, in *Ordonez v. Radio Shack, Inc.*, No. CV 10-7060-CAS JCGX, 2013 WL 210223 (C.D. Cal. Jan. 17, 2013), the court denied certification even though the plaintiff submitted evidence of a facially unlawful policy regarding rest breaks. The *Ordonez* court concluded that the predominance and superiority elements were not met based on the employer's presentation of anecdotal evidence of lawful compliance notwithstanding the unlawful policy. *Id*. at *10-*12. The risks of not certifying the class—and therefore ringing the "death knell" for the litigation—is high and creates a high contingent risk for counsel prosecuting the action here.

Because attorneys pursuing claims in contingency will sometimes lose after expending hundreds of hours, and often advancing tens of thousands of dollars in expenses, an enhancement ensures that the risks do not outstrip the incentives to pursue claims on behalf of employees. The high contingent risk borne by Plaintiff's Counsel thus supports the fee request.

### 3.    The Skill of Counsel and Work Performed Support the Requested Fees

The skill and experience of counsel and nature of work performed, also militate in favor of Plaintiff's fee request. *See City of Burlington v. Dague*, 505 U.S. 557, 562-563 (1992). Plaintiff's

Counsel are seasoned attorneys with considerable experience in wage and hour class actions. Plaintiff's Counsel regularly litigate wage and hour claims through certification and on the merits, and have considerable experience settling wage and hour class actions. (Perez Decl. ¶¶ 11-19, Ex. 1.) Plaintiff's Counsel thoroughly investigated Plaintiff's claims and made skillful use of documents and data provided by Defendant to assess its potential exposure as to the claims at issue and to bring the litigation to a successful resolution.

**4.    A Lodestar Cross-Check Confirms that the Requested Fees Are Fair and Reasonable**

The trial court may use an abbreviated lodestar "cross-check" for common fund awards if the court considers it useful. *Laffitte II*, 1 Cal. 5th at 504-05. However, under *Laffitte II*, this is not meant to displace the percentage analysis, but rather to act as a backstop. Indeed, the Supreme Court expressly instructed that "the lodestar calculation, when used in this manner, does not override the trial court's primary determination of the fee as a percentage of the common fund and thus does not impose an absolute maximum or minimum on the fee award." *Laffitte II*, 1 Cal. 5th at 505. Critically, the Court in *Laffitte II* emphasized that only where the "multiplier calculated by means of a lodestar cross-check is **extraordinarily high or low**" should the court "consider whether the percentage should be adjusted so as to bring the imputed multiplier within a justifiable range." *Id.* (emphasis added). Accordingly, when the cross-check multiplier is within a normal range, the lodestar-cross check does not provide a basis for a court to reduce the fee award. Furthermore, in conducting a lodestar cross-check, the court is not "required to closely scrutinize each claimed attorney-hour." *Laffitte II*, 1 Cal. 5th at 505. An evaluation may be done by reviewing "counsel declarations summarizing overall time spent." *Id.*

In conducting a lodestar cross-check, the Court first determines a lodestar value for the fees by multiplying the time reasonably spent by plaintiffs' counsel on the case by a reasonable hourly rate. *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 556-57 (2009). To determine whether the requested rate is reasonable, courts look to the prevailing rate for similar work in the pertinent geographic region. *PLCM Group v. Drexler*, 22 Cal. 4th 1084, 1096-97 (2000) (using prevailing hourly rate in community for comparable legal services even though party used in-house counsel). Here, Plaintiff's Counsel's hourly rates are comparable to, or less than, those charged by other class action plaintiffs' counsel and

1    the firms defending class actions, and have been approved by numerous federal and state courts. (Perez

2    Decl. ¶¶ 20-23, Ex. 2.)

3        Likewise, the total attorney hours expended on this action are reasonable and in line with

4    comparable cases. In determining the reasonableness of the hours expended, "the court should defer to

5    the winning lawyer's professional judgment as to how much time he was required to spend on the case;

6    after all, he won, and might not have, had he been more of a slacker." *Kerkeles v. City of San Jose*, 243

7    Cal. App. 4th 88, 104 (2015) (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir.

8    2008)). Plaintiff's Counsel billed a total of approximately 350 hours. (Perez Decl. ¶ 20.)

9        Multiplying the total hours billed by Plaintiff's Counsel to the litigation by their reasonable

10   hourly rates yields a lodestar of $269,717.50. (Perez Decl. ¶ 20.) Applying a 1.42 multiplier to that

11   lodestar yields the requested fees. A 1.42 multiplier is not "extraordinarily high"—to the contrary, the

12   normal range for a multiplier on a lodestar cross-check "can range from 2 to 4 or even higher." *Wershba*

13   *v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001); *see also Vizcaino v. Microsoft Corp.*, 290

14   F.3d 1043, 1047 (9th Cir. 2002) (multipliers "ranging from one to four are frequently awarded ... when

15   the lodestar method is applied"; affirming fees where the cross-check multiplier is 3.65).

16       Courts routinely accept multipliers ranging from 2 to 4 on a lodestar cross-check. *See*, *e.g.*, *Sutter*

17   *Health Uninsured Pricing Cases*, 171 Cal. App. 4th 495, 512 (2009) (applying a 2.52 multiplier on a

18   lodestar cross-check); *Chavez*, 162 Cal. App. 4th at 66 (applying a 2.5 multiplier in a consumer class

19   action); *Willner v. Manpower Inc.*, No. 11-CV-02846-JST, 2015 WL 3863625, at *7 (N.D. Cal. June 22,

20   2015) (approving a 2.10 multiplier on settlement of California Labor Code violations); *Dyer v. Wells*

21   *Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) (approving attorneys' fees that resulted in

22   lodestar multiplier of 2.83); *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358,

23   at *5 (N.D. Cal. Feb. 6, 2013) (approving a multiplier of 2.76 in settlement of Labor Code violations).

24       Courts following *Laffitte II* have reaffirmed that a multiplier between 2 and 4 to be reasonable

25   and not so "extraordinarily high" as to require greater judicial scrutiny. Indeed, courts "commonly apply

26   multipliers in that range in California wage and hour class actions," and often apply multipliers that far

27   exceed that range. *Kang v. Wells Fargo Bank, N.A.*, 2021 WL 5826230, at *17-18 (N.D. Cal. Dec. 8,

28   2021) (ordering multiplier of 5.5 in wage and hour class action); *Uschold v. NSMG Shared Servs., LLC*,

1    2020 WL 3035776, at *16 (N.D. Cal. June 5, 2020) (awarding multiplier of 4 in wage and hour class

2    action); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. Sept. 30, 2016) (finding that

3    a 3.07 multiplier is "well within the range for reasonable multipliers" under *Laffitte II*); *Beaver v.*

4    *Tarsadia Hotels,* No. 11-CV-01842-GPC-KSC, 2017 WL 4310707, at *13 (S.D. Cal. Sept. 28, 2017)

5    ("The one-third fee Class Counsel seeks reflects a multiplier of 2.89 on the lodestar which is reasonable

6    for a complex class action case."); *Lazarin v. Pro Unlimited, Inc.*, No. C11–03609 HRL, 2013 WL

7    3541217, at *8 (N.D. Cal. July 11, 2013) (finding lodestar multiplier of 3.36 in wage and hour action

8    was reasonable on a percentage cross-check).

9         A multiplier is needed primarily because Plaintiff settled prior to filing a time-consuming

10   certification motion. As explained above, the decision to settle early is to be lauded, since Class

11   Members will now avoid the risks of additional litigation and are assured of substantial and immediate

12   monetary recovery.[1] Indeed, under California law, "the promptness of settlement cannot be used to

13   justify the refusal to apply a multiplier to reflect the size of the class recovery without exacerbating the

14   disincentive to settle promptly inherent in the lodestar methodology." *Lealao*, 82 Cal. App. 4th at 52.

15   According to *Lealao*, to not apply a multiplier under these circumstances would undermine California

16   policy, as "awards that are too small [will] chill the private enforcement essential to the vindication of

17   many legal rights and obstruct the representative actions that often relieve the courts of the need to

18   separately adjudicate numerous claims." *Id.* at 53.

19        Further, under both California and federal law, a multiplier may be applied to the lodestar figure

20   to take into account the fact that the litigation precluded the attorney from accepting other employment.

21   See *Ketchum*, 24 Cal. 4th 1122, 1132 (2001); *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157,

22   1217 (2008) (noting "the burden imposed on class counsel," which included "a significant amount of

23   billing" for "a small firm such as [theirs]"); *Horsford*, 132 Cal. App. 4th at 399 (recognizing that suit's

24

25        [1] Many district courts in California have declined to apply a lodestar cross-check when parties
26   settle early in the case. *See, e.g.*, *Glass v. UBS Financial Services, Inc.*, No. 06-4066-MMC, 2007 WL
     221862, at *16 (N.D. Cal. Jan. 26, 2007) (finding "no need to conduct a lodestar cross-check [as] [c]lass
27   counsel's prompt action in negotiating a settlement while the state of the law remained uncertain should
     be fully rewarded"); *Lopez v. Youngblood*, No. 07-0474-DLB, 2011 WL 10483569, at *14 (E.D. Cal.
28   Sep. 2, 2011) ("A lodestar cross-check is not required in this circuit, and in a case such as this, is not a
     useful reference point").

MOTION FOR ATTORNEYS' FEES, COSTS, AND A CLASS REPRESENTATIVE INCENTIVE PAYMENT
5:22-cv-07614-PCP

1    effect on attorneys' law practices substantially increases risk taken). Here, Plaintiff's Counsel's

2    representation of Plaintiff and the Settlement Class was entirely contingent on prevailing on their wage

3    and hour claims and collecting an award of attorneys' fees, and by taking on this case, Plaintiff's Counsel

4    had to turn away other potential fee generating work because of the time required to perform all the tasks

5    summarized in counsel's declaration in support of this motion. (Perez Decl. ¶ 24.)

6        The lodestar cross-check confirms that Plaintiff's fee request is fair and reasonable and should be

7    approved.

8        **E.    Plaintiff's Counsel's Out-Of-Pocket Costs Should Be Reimbursed**

9        Defendant has agreed to pay Plaintiff's Counsel's litigation costs as part of the negotiated fees.

10   For these costs, the rule is that prevailing parties may recover, as part of statutory attorneys' fees,

11   "litigation expenses only when it is the prevailing practice in a given community for lawyers to bill those

12   costs separately from their hourly rates." *Trs. of the Constr. Indus. and Laborers Health and Welfare*

13   *Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006) (internal quotation marks omitted). In

14   California, attorneys are reimbursed for out-of-pocket expenses such as ""1) meals, hotels, and

15   transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight

16   delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9)

17   mediation fees." *Johnson v. Gen. Mills, Inc.*, No. SACV 10-00061-CJC, 2013 WL 3213832, at *6 (C.D.

18   Cal. June 17, 2013) (quoting *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal.

19   2007) (both courts awarding the requested expenses, including for expert witnesses, mediation,

20   photocopying and computerized research).

21       Here, Plaintiff's Counsel have expended costs of $33,273.37. (Perez Decl. ¶ 25.) These are costs

22   of precisely the sort that are reimbursable because they are reasonable and were necessarily incurred

23   during the case's pendency. The requested costs reimbursement of $25,000 is accordingly fair and

24   reasonable and should be approved.

25       **F.    The Class Representative Incentive Payment is Fair and Reasonable**

26       "Incentive awards are fairly typical in class action cases . . . Such awards are discretionary and

27   are intended to compensate class representatives for work done on behalf of the class . . . ." *Rodriguez v.*

28   *West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (citing 4 *William B. Rubenstein et al., Newberg on*

*Class Actions* § 11:38 (4th ed. 2008)). These payments work both as an inducement to participate in the suit and as compensation for time spent in litigation activities. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463 (describing the service award as an incentive to the class representatives).

So long as the incentive awards do not create a conflict of interest between the representatives and class members, modest payments to named plaintiffs for their services as class representatives are customary and generally approved. *See Van Vranken*, 901 F. Supp. at 300. To determine whether the proposed incentive award is fair and reasonable, many courts in the Ninth Circuit apply the "five-factor test set forth in *Van Vranken.*" *Grant v. Cap. Mgmt. Servs.*, L.P., No. 10-CV-2471-WQH BGS, 2014 WL 888665, at *7 (S.D. Cal. Mar. 5, 2014).

Under the *Van Vranken* test, courts consider: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Van Vranken*, 901 F. Supp. at 299 (citations omitted). However, not all factors need to present. Rather, the Court may weigh the factors and, award fees that are "just and reasonable under the circumstances." *See, e.g., In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.,* 295 F.R.D. 438, 472 (C.D. Cal. 2014) (citing *Van Vranken*, 901 F. Supp. at 299). Here, the proposed $10,000 incentive award is just and reasonable.

The Class Representative Incentive Payment is justified in light of the reputational risk that Plaintiff has assumed in bringing an action against a former employer. *See Billinghausen v. Tractor Supply Co.,* 306 F.R.D. 245, 267-68 (N.D. Cal. 2015) (finding "personal detriment" upon testimony that future employers can easily learn that a prospective employee served as a plaintiff through the internet). By bringing this action, Plaintiff has assumed reputational risk that may impact her ability to find employment in the future. Long after this action is forgotten by Class Members, Plaintiff will have to endure the risk of possibly being branded "litigious" by prospective employers, and may have employment applications rejected on that basis alone.

The Class Representative Incentive Payment is reasonable in light of Plaintiff's service as a class representative. Indeed, but for Plaintiff's service, Class Members would have recovered nothing for their

1   claims, and with the passage of time, the claims in controversy would have been barred. The requested

2   $10,000 Class Representative Incentive Payment is thus fair and reasonable compensation for Plaintiff's

3   effort in prosecuting the action on behalf of the class, regularly conferring with counsel on the status of

4   the case and the strategies for prosecuting the claims, and reviewing the proposed settlement to ensure

5   that its terms are fair and provide adequate relief for the Class. Plaintiff deserves the requested Class

6   Representative Incentive Payment because she "remained fully involved and expended considerable

7   time and energy during the course of the litigation." *See Schaffer v. Litton Loan Servicing, LP*, No. CV

8   05-07673 MMM JCX, 2012 WL 10274679, at *19 (C.D. Cal. Nov. 13, 2012) (citation omitted). The

9   amount of the requested Class Representative Incentive Payment is also reasonable by reference to the

10  amounts the California Superior Court has awarded for similar wage and hour settlements.[2]

11          The Class Representative Incentive Payment is also appropriate because Plaintiff would

12  otherwise "not gain any benefit beyond that [she] would receive as an ordinary class member." *In re*

13  *Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438,

14  472 (C.D. Cal. 2014); *Van Vranken v. Atlantic Richfield Co*., 901 F. Supp. 294, 299 (N.D. Cal. 1995)

15  (holding that a substantial award is appropriate where a class representative's claim made up "only a tiny

16  fraction of the common fund."). Absent the Class Representative Incentive Payment, Plaintiff will

17  recover no more than other Class Members, despite undergoing personal sacrifice and reputational risk

18  in pursuing this litigation on behalf of the Class.

---

[2] *See Carter v. GMRI Inc.*, No. RIC 1506085 (Riverside County Super. Ct. Jan. 10, 2017) (awarding $10,000 enhancement payments to the named plaintiffs); *Crook v. Barton Healthcare System*, No. SC20150146 (El Dorado County Super. Ct. Dec. 9, 2016) (awarding $10,000 enhancement payment to the named plaintiff); *Singh v. American Building Supply, Inc.*, No. 34-2015-00179889-CU-OE-GDS (Sacramento County Super. Ct. Oct. 3, 2016) (awarding $10,000 enhancement payment to the named plaintiff); *Alvarez v. MAC Cosmetics Inc.*, No. CIVDS1513177 (San Bernardino County Super. Ct. July 29, 2016) (awarding $10,000 enhancement payments to the named plaintiffs); *Coffey v. Beverages & More, Inc.*, No. BC477269 (L.A. County Super. Ct. July 26, 2016) (awarding $10,000 enhancement payment to the named plaintiff); *Restoration Hardware Wage and Hour Cases*, No. JCCP4794 (L.A. County Super. Ct. April 28, 2016) (awarding $10,000 enhancement payments to the named plaintiffs); *Cook v. United Insurance Co. of Amer.*, No. CIVMSC10-00425 (Contra Costs County Super. Ct. April 15, 2016) (awarding $10,000 enhancement payments to the named plaintiffs); *Quintana v. Claire's Boutiques, Inc.*, No. 5:13-cv-00368-PSG (N.D. Cal. Dec. 1, 2015) (awarding $10,000 enhancement payments to the named plaintiffs); *Paredes v. American Family Care, Inc.*, No. 34-2014-00167060-CU-OE-GDS (Sacramento County Super. Ct. Nov. 17, 2015) (awarding $10,000 enhancement payment to the named plaintiff); *Hoagland v. Brooks Brothers Group, Inc.*, No. BC511534 (L.A. County Super. Ct. July 16, 2015) (awarding $10,000 enhancement payment to the named plaintiff).

MOTION FOR ATTORNEYS' FEES, COSTS, AND A CLASS REPRESENTATIVE INCENTIVE PAYMENT
5:22-cv-07614-PCP

The Class Representative Incentive Payment is also justified in light of the Civil Code section 1542 waiver and general release that Plaintiff is required to provide Defendant as a condition of settlement. Under the Civil Code section 1542 release, Plaintiff will release any and all known and unknown claims she may have against Defendant arising out of her employment. This general release is considerably broader than the separate, narrower release required of the Class. *See Billinghausen v. Tractor Supply Co.,* 306 F.R.D. 245, 267-68 (N.D. Cal. 2015) (awarding the plaintiff $5,000 for the general release along with $10,000 enhancement payment for services as a class representative); *La Fleur v. Medical Management Intern, Inc*., No. 13-00398-VAP, 2014 WL 2967475, *8 (C.D. Cal. June 25, 2014) (finding that the $15,000 enhancement payment is warranted in part because "the named plaintiffs have released all claims against [defendant], unlike the remainder of the Class").

In conclusion, the requested Class Representative Incentive Payment is fair, adequate, and reasonable compensation for Plaintiff's services on behalf of the Class and for the risks and personal sacrifice she assumed, and for her general release of claims and waiver of Section 1542.

## III.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant the Motion for Attorneys' Fees, Costs and Expenses, and a Class Representative Incentive Payment.

Dated: August 29, 2025                     Respectfully submitted,

                                By:  /s/ Bevin Allen Pike
                                      Raul Perez
                                      Bevin Allen Pike
                                      Daniel Jonathan
                                      Trisha K. Monesi
                                      **CAPSTONE LAW APC**

                                      Attorney for Plaintiff Shania Cole