Raul Perez (SBN 174687)
Raul.Perez@capstonelawyers.com
Bevin Allen Pike (SBN 221936)
Bevin.Pike@capstonelawyers.com
Daniel Jonathan (SBN 262209)
Daniel.Jonathan@capstonelawyers.com
Trisha K. Monesi (SBN 303512)
Trisha.Monesi@capstonelawyers.com
CAPSTONE LAW APC
1875 Century Park East, Suite 1860
Los Angeles, California 90067
Telephone:      (310) 556-4811
Facsimile:      (310) 943-0396

Attorneys for Plaintiff Shania Cole

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANIA COLE, individually, and on behalf of other members of the general public similarly situated, and as an aggrieved employee pursuant to the Private Attorneys General Act ("PAGA"),<br><br>Plaintiff,<br><br>vs.<br><br>LANE BRYANT, INC., a Delaware corporation; LANE BRYANT BRANDS OPCO LLC, an Ohio limited liability company; LANE BRYANT #6243, INC., a Florida corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 5:22-cv-06714-PCP<br><br>Assigned to the Hon. P. Casey Pitts<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF AMENDED CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:      November 20, 2025<br>Time:      10:00 a.m.<br>Place:      Courtroom 8 |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 20, 2025, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 8 of the above-captioned court, located at 280 South First Street, San Jose, California 95113, the Honorable P. Casey Pitts presiding, Plaintiff Shania Cole will, and hereby does, move this Court for entry of an order and judgment granting final approval of the settlement and all agreed-upon terms therein. This Motion, unopposed by Defendant Lane Bryant Brands Opco LLC, seeks final approval of: (1) the Amended Class Action and PAGA Representative Action Settlement Agreement, (2) settlement payments to Participating Class Members, PAGA Members, and the LWDA, and (3) costs/expenses to the settlement administrator, CPT Group, Inc.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in support of Motion for Final Approval of Class Action and PAGA Settlement; (3) the previously filed Motion for Attorneys' Fees, Costs, and Class Representative Incentive Payment; (4) the Declaration of Raul Perez; (5) the Declaration of Kaylie O'Connor on behalf of CPT Group, Inc., the settlement administrator; (6) the [Proposed] Order and [Proposed] Judgment; (7) the records, pleadings, and papers filed in this action; and (8) upon such other documentary and/or oral evidence as may be presented to the Court at the hearing.

Dated: October 20, 2025                              Respectfully submitted,

                              By:  /s/ Bevin Allen Pike
                                   Raul Perez
                                   Bevin Allen Pike
                                   Daniel Jonathan
                                   Trisha K. Monesi
                                   **CAPSTONE LAW APC**

                                   Attorney for Plaintiff Shania Cole

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................................. 1

II.    FACTS AND PROCEDURE ........................................................................................... 3

       A.    Brief Overview of the Litigation and Settlement Negotiations ........................ 3

       B.    The Proposed Settlement Fully Resolves Plaintiff's Claims ............................ 3

             1.    Persons Covered by the Settlement ...................................................... 3

             2.    Settlement Consideration ...................................................................... 4

             3.    Releases by Participating Class Members and PAGA Members ........... 5

       C.    The Notice and Settlement Administration Processes Were Completed Pursuant to

             the Court's Order .............................................................................................. 6

III.   ARGUMENT .................................................................................................................. 7

       A.    Class Certification Requirements Are Met ....................................................... 7

       B.    The Court Should Grant Final Approval of the Class Settlement ..................... 7

             1.    The Settlement Was Reached Through Arm's-Length Bargaining in Which

                   All Parties Were Represented by Experienced Counsel .......................... 9

             2.    The Extent of Discovery Completed Supports Final Approval .............. 9

             3.    The Settlement Is Within the Range of Reasonableness Considering the

                   Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Duration

                   of Further Litigation ............................................................................ 10

             4.    The Settlement Class Has Responded Positively to the Settlement ...... 13

       C.    The Court Should Approve the PAGA Settlement .......................................... 14

       D.    The Requested Payment to the Settlement Administrator Is Reasonable and Should

             Receive Final Approval .................................................................................. 17

IV.    CONCLUSION ............................................................................................................. 18

MOTION FOR FINAL APPROVAL OF AMENDED CLASS ACTION AND PAGA SETTLEMENT

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Aguirre v. Genesis Logistics*, No. SACV 12-00687 JVS (ANx), 2013 WL 10936035
(C.D. Cal. Dec. 30, 2013).................................................................................................16

*Ahmed v. Beverly Health and Rehabilitation Servs., Inc.*, No. 2:16-1747, 2018 WL
746393 (E. D. Cal. Feb. 6, 2018).......................................................................................17

*Alcala v. Meyer Logistics, Inc.*, No. CV177211PSGAGRX, 2019 WL 4452961 (C.D.
Cal. June 17, 2019) ...........................................................................................................16

*Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015)........................................................................9

*Balderas v. Massage Envy Franchising, LLP,* 2014 WL 3610945. (N.D. Cal. July 21,
2014)...................................................................................................................................12

*Cabrales v. Bae Sys. San Diego Ship Repair, Inc.*, No. 21-CV-02122-AJB-DDL, 2024
WL 4994339 (S.D. Cal. Dec. 5, 2024) ..............................................................................16

*Castro v. Paragon Indus., Inc.*, No. 1:19-cv-00755-DAD-SKO, 2020 WL 1984240 (E.D.
Cal. Apr. 27, 2020) ............................................................................................................17

*Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016)........................................7

*Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848 (N.D. Cal. 2010)...............................14

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992).................................................7

*Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030 (N.D. Cal. 2016).......................................................15

*D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ........................................................9

*Fleming v. Covidien Inc.*, No. ED CV 10-01487 RGK (OPx) (OPX), 2011 WL 7563047
(C.D. Cal. Aug. 12, 2011) .................................................................................................15

*Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL
1687832 (N.D. Cal. Apr. 22, 2010) ...................................................................................14

*Hamilton v. Juul Labs, Inc.*, No. 20-CV-03710-EMC, 2021 WL 5331451 (N.D. Cal.
Nov. 16, 2021)....................................................................................................................16

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).................................................7, 8, 14

MOTION FOR FINAL APPROVAL OF AMENDED CLASS ACTION AND PAGA SETTLEMENT

*Hopson v. Hanesbrands Inc.*, Civ. No. 08–844 EDL, 2009 WL 928133 (N.D. Cal. Apr. 3, 2009) ................................................................................................................ 17

*Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133 (N.D. Cal. Apr. 3, 2009) ................................................................................................................ 17

*In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 WL 4820784 (N.D. Cal. Nov. 5, 2008) .............................................................................. 9

*In Re Armored Car Antitrust Litig.*, 472 F. Supp. 1357 (N.D. Ga. 1979) ..................... 12

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ..................... 9

*In re Extreme Networks, Inc. Sec. Litig.*, No. 15-04883, 2019 WL 3290770 (N.D. Cal. July 22, 2019) ............................................................................................................. 8

*In Re Four Seasons Secs. Laws Litig.*, 58 F.R.D. 19 (W.D. Okla.1972) ....................... 12

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019) .......................... 7

*In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......................... 12

*In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002) ....................... 12

*Li v. A Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2012 WL 2236752 (N.D. Cal. June 15, 2012) ................................................................................................... 16

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ............................... 10

*Merante v. Am. Inst. for Foreign Study, Inc.*, 2022 WL 2918896 (N.D. Cal. July 25, 2022) ................................................................................................................... 16

*Munoz v. UPS Ground Freight, Inc.*, Civ. No. 07–970, 2009 WL 1626376 (N.D. Cal. June 9, 2009) ....................................................................................................... 17

*Naro v. Walgreen Co.*, No. 22-CV-03170-JST, 2025 WL 440057 (N.D. Cal. Jan. 16, 2025) ................................................................................................................... 16

*Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ................... 11

*Nat'l Rural Telecomm. Coop. v. Directv, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ................ 13

*Newman v. Stein*, 464 F. 2d 689 (2d Cir. 1972) ....................................................... 11

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ..................... 10

*Ogbuehi v. Comcast of California/Colorado/Fla./Oregon, Inc.*, 303 F.R.D. 337 (E.D.
  Cal. 2014)...............................................................................................................9

*Rodriguez v. Danell Custom Harvesting, LLC*, 293 F. Supp. 3d 1117 (E.D. Cal. 2018) ..........................17

*Rodriguez v. West Pub. Corp.*, 463 F.3d 948 (9th Cir. 2009) .......................................10

*Smith v. Kaiser Found. Hosps.*, 2020 WL 5064282 (S.D. Cal. Aug. 26, 2020) .........................16

*Syed v. M-I, L.L.C.*, No. 1:12-cv-01718-DAD-MJS, 2017 WL 714367 (E.D. Cal. Feb.
  22, 2017) .............................................................................................................17

*Van Kempen v. Matheson Tri-Gas, Inc.*, No. 15-CV-00660-HSG, 2017 WL 3670787
  (N.D. Cal. Aug. 25, 2017)...................................................................................17

*Villegas v. J.P. Morgan Chase & Co.*, No. 09–00261, 2012 WL 5878390 (N.D. Cal.
  Nov.21, 2012).......................................................................................................9


**STATE CASES**

*Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018)........................................15

*Elder v. Schwan Food Co.*, No. B223911, 2011 WL 1797254 (Cal. Ct. App. May 12,
  2011).....................................................................................................................16

*Nordstrom Com. Cases*, 186 Cal. App. 4th 576 (2010) ...............................................17

*Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112 (2012)..........................15


**STATE STATUTES**

Cal. Lab. Code § 2699(h).................................................................................................15

MOTION FOR FINAL APPROVAL OF AMENDED CLASS ACTION AND PAGA SETTLEMENT

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3         On July 2, 2025, this Court granted preliminary approval of the Amended Class Action and

4    PAGA Representative Action Settlement Agreement[1] and approved distribution of the Notice of Class

5    Action Settlement to all Class Members. Class Members were given 60 days to opt out or object[2] to the

6    Settlement ("Response Deadline"). Now that the Response Deadline has passed, Plaintiff Shania Cole is

7    pleased to report that: (1) no Class Members opted out; (2) no Class Members have objected to the

8    Settlement; (3) the entire Net Settlement Amount will be disbursed to all Class Members; (4) the average

9    payment to Class Members from the Net Settlement Amount is $397.18, and the highest is $1,169.84.

10   (Declaration of Kaylie O'Connor ["O'Connor Decl."] ¶¶ 6-8.)

11        Plaintiff now moves for final approval of the class action and PAGA settlement. This motion is

12   unopposed by Defendant Lane Bryant Brands Opco LLC (collectively with Plaintiff, the "Parties"). The

13   principal terms of the Settlement provide for the following:

14       (1)    Conditional certification of a Settlement Class defined as: Any person who worked for

15             Defendant as a non-exempt, hourly employee in the State of California at any time from

16             January 1, 2021 through January 25, 2024 ("Class Members").

17       (2)    A **non-reversionary** Gross Settlement Amount of $1,150,000. The Gross Settlement

18             Amount includes:

19           (a)    A Net Settlement Amount (the Gross Settlement Amount minus the requested

20                 attorneys' fees and costs, settlement administration costs, the $150,000 PAGA

21                 settlement, and the Incentive Payment), which will be allocated to all Class

22                 Members on a pro-rata basis according to the number of weeks each Class

23                 Member worked during the Class Period. **The entire Net Settlement Amount**

24                 **will be paid to all Class Members.**

25           (b)    Attorneys' fees in the amount of one-third of the Gross Settlement Amount (or

26

27       [1] Hereinafter, the "Settlement" or "Settlement Agreement."  Unless indicated otherwise, capitalized terms used herein have the same meaning as those defined by the Settlement.

28       [2] The Class Notice also advised Class Members that in lieu of submitting written objections, they could instead appear at the Final Fairness Hearing to object to the Settlement.

$383,333), and litigation costs and expenses not to exceed $25,000, to Capstone Law APC ("Plaintiff's Counsel").

(c)  A $150,000 PAGA settlement, of which 75% (i.e., $112,500) will be paid to the Labor & Workforce Development Agency ("LWDA"), and the remaining 25% (i.e., $37,500) ("PAGA Member Payment"), will be paid to PAGA Members, defined as: Any person who worked for Defendant as a non-exempt, hourly employee in the State of California at any time from August 22, 2022 through January 25, 2024. **The entire PAGA Member Payment will be paid to all PAGA Members.**

(d)  Settlement administration costs of $14,500, to be paid to the jointly selected Settlement Administrator, CPT Group, Inc. ("CPT").

(e)  An Incentive Payment of $10,000 to Shania Cole for her service on behalf of the Settlement Class, the risks she took in bringing the action on behalf of the class, and for a general release of all claims arising out of her employment with Defendant.

An objective evaluation of the Settlement confirms that the relief negotiated on the Settlement Class's behalf is fair, reasonable, and valuable. The Settlement was negotiated by the Parties at arm's length with helpful guidance from Michael Dickstein, Esq., an experienced and well-respected class action mediator, and the Settlement confers substantial benefits to Class Members. This relief—averaging $397.18 per Class Member from the Net Settlement Amount—is particularly impressive when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases. Moreover, by settling now rather than proceeding to trial, Class Members will not have to wait (possibly years) for relief, nor will they have to bear the risk of class certification being denied or of Defendant prevailing at trial, or of Plaintiff prevailing at trial but losing on appeal.

Accordingly, given the Settlement's favorable terms, the Court's previous findings concerning the Settlement's fairness and reasonableness, and the complete absence of objection to the Settlement, Plaintiff respectfully requests that the Court: (1) grant this Motion for Final Approval of the Settlement Agreement; (2) grant final approval of the settlement administration costs/expenses; (3) enter judgment

1  pursuant to the Settlement Agreement; and (4) retain jurisdiction to enforce the Settlement.

2  **II.    FACTS AND PROCEDURE**

3      **A.    Brief Overview of the Litigation and Settlement Negotiations**

4      Plaintiff originally filed this wage and hour action against Defendant in the Santa Clara County

5  Superior Court on September 14, 2022. (Declaration of Raul Perez ["Perez Decl."] ¶ 2.) The Complaint

6  alleged that Defendant failed to: (i) pay minimum wages; (ii) timely pay wages upon termination; (iii)

7  pay wages during employment; (iv) provide meal periods; (v) authorize and permit rest periods; and (vi)

8  provide accurate itemized wage statements and maintain accurate payroll records. (*Id.*) The Complaint

9  also alleged that Defendant's wage and hour violations constituted violations of California's Unfair

10  Competition Law. (*Id.*) On October 10, 2022, Plaintiff submitted a notice letter to the LWDA alleging

11  Labor Code violations by Defendant. (*Id.*) The allegations in the LWDA Notice tracked the allegations

12  in Plaintiff's Complaint. (*Id.*) On October 31, 2022, Defendant filed a Notice of Removal of Action to

13  Federal Court. (*Id.*)

14      On October 27, 2023, the Parties participated in a mediation with Michael Dickstein, Esq., an

15  experienced mediator of wage and hour class actions. (Perez Decl. ¶ 3.) At all times, the Parties'

16  negotiations were adversarial and non-collusive. (*Id.*) Mr. Dickstein helped to manage the Parties'

17  expectations and provided a useful, neutral analysis of the issues and risks to both sides. (*Id.*) With Mr.

18  Dickstein's guidance, the Parties were eventually able to negotiate a complete settlement of Plaintiff's

19  claims. (*Id.*) The terms of the settlement are now set forth in complete and final form in the Amended

20  Class Action and PAGA Representative Action Settlement Agreement. (*Id.*) The Settlement therefore

21  constitutes a fair, adequate, and reasonable compromise of the claims at issue. (*Id.*)

22      As a condition of the settlement, the Parties have stipulated (*see* ECF No. 29) to the filing of a

23  First Amended Complaint to conform the pleadings with the scope of the Released Class Claims and

24  Released PAGA Claims. (Settlement Agreement ¶ 75.) The Parties are currently awaiting a ruling on the

25  stipulation.

26      **B.    The Proposed Settlement Fully Resolves Plaintiff's Claims**

27          **1.    Persons Covered by the Settlement**

28      The Settlement provides relief to Class Members and PAGA Members, collectively consisting

of Defendant's current and former non-exempt California employees. Class Members are all persons who worked for Defendant as a non-exempt, hourly employee in the State of California at any time from January 1, 2021, through January 25, 2024. (Settlement Agreement ¶ 4.) PAGA Members are all persons who worked for Defendant as a non-exempt, hourly employee in the State of California at any time from August 22, 2022, through January 25, 2024. (Settlement Agreement ¶ 26.)

### 2.    Settlement Consideration

Plaintiff and Defendant have agreed to settle the underlying class claims in exchange for the Gross Settlement Amount of $1,150,000. The Gross Settlement Amount includes: (1) automatic payments to all Participating Class Members from the Net Settlement Amount; (2) $383,333 in attorneys' fees (i.e., one-third of the common fund) and up to $25,000 in litigation costs to Plaintiff's Counsel; (3) Settlement Administration Costs of $14,500; (4) a $150,000 PAGA settlement; and (5) a Class Representative Incentive Payment of $10,000 for Plaintiff's service on behalf of the Settlement Class, the risks she took in bringing her representative claims, and for a release of all claims arising out of her employment with Defendant. (Settlement Agreement ¶¶ 16-17, 21, 27, 34.) Likewise, the entire PAGA Fund will be distributed to PAGA Members in full. (*Id.* at ¶ 27.)

Payments to Participating Class Members will be made from the Net Settlement Amount. (Settlement Agreement ¶ 64.) The individual allocations will be calculated on a pro-rata basis using the number of weeks worked by each Class Member during the Class Period. (*Id.*) This is a fair and equitable means of apportioning the Net Settlement Fund to Class Members. Class Members who worked for a longer duration during the Class Period will receive proportionally larger payments than those employees who worked for shorter durations.

Payments to PAGA Members will be made from the PAGA Member Payment. (Settlement Agreement ¶ 65.) The individual allocations will be calculated on a pro-rata basis using the number of pay periods by each PAGA Member during the PAGA Period. (*Id.*) This is a fair and equitable means of apportioning the PAGA Fund to PAGA Members. PAGA Members who worked for a longer duration during the PAGA Period will receive proportionally larger payments than those employees who worked for shorter durations.

### 3.    Releases by Participating Class Members and PAGA Members

In exchange for the Gross Settlement Amount, Plaintiff and Participating Class Members will release the Released Class Claims during the Class Period:

> All claims, obligations, demands, rights, causes of action, and liabilities against Defendant and Released Parties that have been asserted in the Complaint and the First Amended Complaint, or that could reasonably have been asserted in the Complaint or the First Amended Complaint, and any amendments thereto, based on the facts, matters, and/or allegations pled therein. Released Class Claims include, but is not limited to, claims under Labor Code sections 201, 202, 203, 204, 210, 226, 226.3 226.7, 510, 512, 516, 1174, 1182.12, 1194, 1194.2, 1197, 1197.1, 1198, 2810.5, and Business and Professions Code § 17200, *et seq.*, including, but not limited to, claims for failure to pay minimum wages, failure to pay overtime wages, including at the regular rate, failure to provide meal periods and/or pay meal period premiums, failure to authorize and permit rest periods and/or pay rest period premiums, failure to provide accurate or otherwise compliant wage statements, failure to maintain payroll records, failure to timely pay wages during employment, failure to timely pay wages upon termination, failure to provide notice under California's Wage Theft Prevention Act, and violations of California's Unfair Competition Law, including unfair and unlawful business practices, and includes all such claims during the Class Period.

(Settlement Agreement ¶ 76.)

And in exchange for the PAGA settlement, Plaintiff, the LWDA, and PAGA Members will release the Released PAGA Claims during the PAGA Period:

> All claims, obligations, demands, rights, causes of action, and liabilities against Defendant and Released Parties, for PAGA civil penalties that have been asserted in the First Amended Complaint and/or the PAGA letter to the LWDA, and any amendments thereto, or that could reasonably have been asserted in the First Amended Complaint, the PAGA letter to the LWDA, and any amendments

thereto, based on the facts, matters and/or allegations pled therein. Released PAGA Claims include, but is not limited to, claims for PAGA civil penalties for violations of Labor Code sections 201, 202, 203, 204, 210, 226, 226.3, 226.7, 256, 510, 558, 512, 516, 1174, 1182.12, 1194, 1197, 1197.1, 1198, and the applicable IWC wage orders, including, but not limited to, claims for failure to pay minimum wages, failure to pay overtime wages, including at the regular rate, failure to provide meal periods and/or pay meal period premiums, failure to authorize and permit rest periods and/or pay rest period premiums, failure to provide accurate or otherwise compliant wage statements, failure to maintain payroll records, failure to timely pay wages during employment, failure to timely pay wages upon termination, and failure to provide suitable seating when the nature of the work reasonably permits the use of seats and when employees are not engaged in the active duties of employment and the nature of the work requires standing, and includes all such claims during the PAGA Period.

(*Id.* at ¶ 77.)

C.    **The Notice and Settlement Administration Processes Were Completed Pursuant to the Court's Order**

As authorized by the Court's Order preliminarily approving the Settlement Agreement, the Parties engaged CPT to provide settlement administration services. (O'Connor Decl. ¶ 2.) CPT's duties have, and if the Court enters the final approval order, will include: (1) printing and mailing the Notice of Class Action Settlement ("Notice"); (2) receiving and processing undeliverable Notices and locating updated addresses for Class Members; (3) receiving and validating Requests for Exclusion; (4) calculating and distributing the Class Settlement Amount; (5) tax reporting; (6) providing necessary reports and declarations; and (7) performing such other tasks as set forth in the Settlement Agreement or as the Parties mutually agree or that the Court orders. (*Id.*)

On July 2, 2025, CPT received the Class Notice prepared jointly by Plaintiff's Counsel and counsel for Defendant and approved by the Court. (O'Connor Decl. ¶ 3.) The Class Notice summarized

1  the Settlement's principal terms, provided Class Members with an estimate of how much they would be

2  paid if the Settlement received final approval, and advised Class Members about how to opt out of the

3  Settlement and how to object. (*Id.*)

4  Separately, counsel for Defendant provided CPT with a mailing list (the "Class List"), which

5  included each Class Member's full name, last known address, Social Security Numbers, and information

6  necessary to calculate payments. (O'Connor Decl. ¶ 3.) The mailing addresses contained in the Class List

7  were processed and updated using the National Change of Address Database maintained by the U.S.

8  Postal Service. (*Id.* at ¶ 4.) On August 14, 2025, CPT mailed Class Notices to Class Members via First-

9  Class U.S. mail. (*Id.*) Class Members were given 60 days to opt out or object to the Settlement. Plaintiff

10  is pleased to report that no Class Members opted out, and no Class Members objected to the Settlement.

11  (*Id.* at ¶¶ 6-7.)

12  **III.    ARGUMENT**

13  **A.    Class Certification Requirements Are Met**

14  The Court certified the Settlement Class for settlement purposes upon Preliminary Approval,

15  finding that requirements under Rule 23(a) and Rule 23(b)(2) were satisfied. (*See* Dkt. No. 52.) Nothing

16  has changed that would affect the Court's ruling on class certification. *See Chambers v. Whirlpool Corp.*,

17  214 F. Supp. 3d 877 (C.D. Cal. 2016) (reconfirming the certification set forth in the preliminary approval

18  order "[b]ecause the circumstances have not changed" since that order); *In re Hyundai & Kia Fuel Econ.*

19  *Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc) (courts must apply the criteria for class certification

20  "differently in litigation classes and settlement classes"). Therefore, the Court should grant final

21  certification of the Settlement Class.

22  **B.    The Court Should Grant Final Approval of the Class Settlement**

23  Upon final approval, the Court's duty is to determine whether the proposed Settlement is

24  "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.

25  1998). In evaluating the Settlement, the Court is guided by several important policies. First, federal

26  courts favor settlements, particularly in class actions, where the costs, delays and risks of continued

27  litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class*

28  *Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong policy that favors

settlements, particularly where complex class action litigation is concerned"). Second, for settlements reached through arms'-length negotiations, courts are to give:

> [P]roper deference to the private consensual decision of the parties. . . . [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Hanlon*, 150 F.3d at 1027.

Guided by these policies, the district court then may consider some or all of the following factors in evaluating the reasonableness of a settlement: (1) the strength of the plaintiff's case and the risk, expense, complexity, and likely duration of further litigation; (2) the risk of maintaining class action status throughout trial; (3) the amount offered in settlement; (4) the extent of discovery completed and the stage of proceedings; (5) the participation of a governmental participant; (6) the experience and views of counsel; and (7) the reaction of class members. *See Hanlon*, 150 F.3d at 1026 ("*Hanlon* factors").

The amendments to Rule 23 direct the Court to consider a similar list of factors, including whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, taking into account: (a) the costs, risks, and delay of trial and appeal; (b) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (c) the terms of any proposed award of attorney's fees, including timing of payment; and (d) any agreement required to be identified under Rule 23(e)(3); and (4) the proposal treats class members equitably relative to each other. FED. R. CIV. P. 23(e)(2). The Advisory Committee's notes clarify that this list of factors does not "displace" the *Hanlon* factors, "but instead aim to focus the court and attorneys on 'the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-04883, 2019 WL 3290770, at *6 (N.D. Cal. July 22, 2019) (quoting FED. R. CIV. P. 23(e)(2) advisory committee's note to 2018 amendment).

Additionally, for class action settlements prior to contested certification, the Ninth Circuit further requires that the Court scrutinize the settlement even more closely, applying the so-called *Bluetooth* factors. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 938 (9th Cir. 2011), *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015). As set forth below, the Settlement satisfies all of these factors, meriting final approval.

### 1. The Settlement Was Reached Through Arm's-Length Bargaining in Which All Parties Were Represented by Experienced Counsel

As discussed above, the Parties participated in a mediation with Michael Dickstein, Esq., an experienced mediator of wage and hour class actions. Mr. Dickstein helped manage the Parties' expectations and provided a useful, neutral analysis of the issues and risks to both sides. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (the presence of a neutral mediator is a factor weighing in favor of finding of no collusion); *In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 WL 4820784, at *3 (N.D. Cal. Nov. 5, 2008) (mediator's participation weighs considerably against any inference of a collusive settlement); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure."); *Villegas v. J.P. Morgan Chase & Co.*, No. 09–00261, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (participation in mediation "tends to support the conclusion that the settlement process was not collusive"); *Ogbuehi v. Comcast of California/Colorado/Fla./Oregon, Inc.*, 303 F.R.D. 337, 350 (E.D. Cal. 2014) (accord). At all times, the Parties' negotiations were adversarial and non-collusive. (Perez Decl. ¶ 3.)

The Parties were represented by experienced class action counsel throughout the negotiations resulting in this Settlement. Plaintiff is represented by Capstone Law APC. Plaintiff's Counsel employ seasoned class action attorneys who regularly litigate wage and hour claims through certification and on the merits, and have considerable experience settling wage and hour class actions. (Perez Decl. ¶¶ 9-17, Ex. 1.) Defendant is represented by Morgan, Lewis & Bockius LLP, an experienced defense firm.

### 2. The Extent of Discovery Completed Supports Final Approval

Based on their analysis of documents and class data produced by Defendant, including

1    Defendant's California labor policies and procedures, Plaintiff's timekeeping and payroll records, and a

2    sample of Class Members' timekeeping and payroll records, Plaintiff's Counsel were able to realistically

3    assess the value of Plaintiff's claims and intelligently engage defense counsel in settlement discussions

4    that culminated in the proposed settlement now before the Court. (Perez Decl.¶¶ 4-7.) By engaging in a

5    thorough investigation and evaluation of Plaintiff's claims, Plaintiff's Counsel can opine that the

6    Settlement, for the consideration and on the terms set forth in the Settlement Agreement, is fair,

7    reasonable, and adequate, and is in the best interests of Class Members in light of all known facts and

8    circumstances, including the risk of significant delay and uncertainty associated with litigation, various

9    defenses asserted by Defendant. (*Id.* at ¶ 8.)

10                   **3.      The Settlement Is Within the Range of Reasonableness Considering the**

11                           **Strength of Plaintiff's Case and the Risk, Expense, Complexity, and**

12                           **Duration of Further Litigation**

13           An objective evaluation of the Settlement confirms that the relief negotiated on the Class's

14    behalf—a $1,150,000 non-reversionary total Gross Settlement Amount—is fair, reasonable, and

15    valuable. The Settlement was negotiated by the Parties at arm's length with helpful guidance from the

16    mediator, Mr. Dickstein, and the Settlement confers substantial benefits to Class Members. The relief

17    offered by the Settlement is particularly impressive when viewed against the difficulties encountered by

18    plaintiffs pursuing wage and hour cases.

19           In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned,

20    the Court may consider the strength of the plaintiff's case and the amount offered in settlement, among

21    other factors. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Ultimately, "the

22    district court's determination is nothing more than an amalgam of delicate balancing, gross

23    approximations, and rough justice," and there is no single "formula" to be applied; rather, the Court may

24    presume that the parties' counsel and the mediator arrived at a reasonable range of settlement by

25    considering Plaintiff's likelihood of recovery. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615,

26    625 (9th Cir. 1982); *Rodriguez v. West Pub. Corp*., 563 F.3d 948, 965 (9th Cir. 2009).

27           Federal district courts recognize that there is an inherent "range of reasonableness" in

28    determining whether to approve a settlement "which recognizes the uncertainties of law and fact in any

particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F. 2d 689, 693 (2d Cir. 1972); *see also Nat'l Rural Telecomm. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery").

| Defendant's Maximum Potential Exposure for the Class Claims | | |
|---|---|---|
| **Claim** | **Explanation** | **Damages/Penalties** |
| Off-the-Clock | ≈ 400,000 shifts worked in aggregate by Class Members × 60% of shifts with off-the-clock violations × $24.62 average overtime rate of pay × 5 minutes off-the-clock | $472,704.00 |
| Meal Periods | ≈ 40,000 shifts with late meal periods × $16.41 average hourly wage. | $656,400.00 |
| Rest Periods | ≈ 250,000 rest period eligible shifts × $16.41 average hourly wage. | $4,102,500.00 |
| Wage Statements | ≈ 35,000 wage statements issued during the 1-year statute of limitations period × $50 penalty. | $1,750,000.00 |
| Final Pay | ≈ 1,100 former employees × 8- hour average shift length × 30 days of penalties × $16.41 average hourly wage × 10% probability of proving willful violation of the Labor Code and absence of good faith defenses. | $433,224.00 |
| **Total** | | **$7,414,828.00** |

Understandably, for purposes of evaluating the settlement's reasonable, the above estimates must be "tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *In re Toys R Us-Delaware, Inc.-- Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453 (C.D. Cal. 2014).

1    Ultimately, Plaintiff's Counsel determined an appropriate range of recovery for settlement

2    purposes by offsetting Defendant's maximum theoretical liability by: (a) the strength of the defenses to

3    the merits of Plaintiff's claims; (b) the risk of class certification being denied; (c) the risk of losing on any

4    of a number of dispositive motions that could have been brought between certification and trial (e.g.,

5    motions to decertify the class, motions for summary judgment, and/or motions in limine) that might have

6    eliminated all or some of Plaintiff's claims, or barred evidence/testimony in support of the claims; (d) the

7    risk of losing at trial; (e) the chances of a favorable verdict being reversed on appeal; and (f) the

8    difficulties attendant to collecting on a judgment (collectively, the "Discount Factors").

9    After taking into account the Discount Factors, Plaintiff's Counsel determined that it would be

10   reasonable to settle for a fraction of Defendant's maximum potential exposure for the class claims

11   (PAGA discussed in the following section), or approximately 16%. Such a discount is inherently

12   reasonable given that Plaintiff would have had to overcome **multiple, dependent** contingencies to

13   prevail on her claims. If anything, the projected odds for each of the above contingencies is generous to

14   the class's position, since plaintiffs in employment cases rarely prevail on **all of the claims** at any of

15   these dispositive stages. Courts routinely approve settlements that provide a similar discounted range of

16   the maximum potential recovery. *See, e.g., Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256

17   (N.D. Cal. 2015) (approving wage-and-hour class action settlement where gross settlement amount was

18   between 11% and 27% of plaintiffs' potential recovery); *In re Warfarin Sodium Antitrust Litig.,* 212

19   F.R.D. 231, 256-58 (D. Del. 2002) (recognizing that a reasonable settlement amount can be 1.6% to 14%

20   of the total estimated damages); *In Re Armored Car Antitrust Litig.,* 472 F. Supp. 1357, 1373 (N.D. Ga.

21   1979) (settlements with a value of 1% to 8% of the estimated total damages were approved); *In Re Four*

22   *Seasons Secs. Laws Litig.,* 58 F.R.D. 19, 37 (W.D. Okla.1972) (approving 8% of damages); *Balderas v.*

23   *Massage Envy Franchising, LLP,* 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (finding that

24   settlement which amounted to 8% of maximum recovery "[fell] within the range of possible initial

25   approval based on the strength of plaintiff's case and the risk and expense of continued litigation."); *In re*

26   *Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement of 6% to

27   8% of estimated damages).

28   The instant settlement compares favorably to other wage and hour settlement approved by the

Northern District of California for comparable wage and hour claims.

| Ford v. CEC Entertainment, Inc., No. 3:14-cv-01420-RS (N.D. Cal.) | |
|---|---|
| Gross Settlement Amount | $2,500,000 |
| Total Number of Class Members | 10,526 |
| Average Class Member Payment | ≈ $150 |
| Final Approval Granted | November 18, 2016 (Judge Richard Seeborg) |

| Rivas v. BG Retail, LLC, No. 5:16-cv-06458-BLF (N.D. Cal.) | |
|---|---|
| Gross Settlement Amount | $175,000 |
| Total Number of Class Members | 396 |
| Average Class Member Payment | ≈ $170 |
| Final Approval Granted | January 16, 2020 (Judge Beth Labson Freeman) |

| Berry v. Urban Outfitters Wholesale, Inc., No. 4:13-cv-02628-JSW (N.D. Cal.) | |
|---|---|
| Gross Settlement Amount | $5,000,000 |
| Total Number of Class Members | 12,308 |
| Average Class Member Payment | $255 |
| Final Approval Granted | April 7, 2016 (Judge Jeffrey S. White) |

Notably, whereas the average class member payments in the above settlements ranged from $150 to $255, the average payment here is $397.18.

### 4. The Settlement Class Has Responded Positively to the Settlement

In evaluating the fairness of a Settlement, the "absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomm. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004). Here, no Class Members opted out, and no Class Members have objected to the Settlement. (O'Connor Decl. ¶¶ 6-7.) The Class's response is "overwhelmingly positive," supporting approval of the Settlement. *See 7-Eleven Owners for Fair Franchising*, 85 Cal. App. 4th at 1152-53 (finding support for the settlement where 80 out of 5,454 class members elected to opt out and nine class

1  members objected); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010)

2  (finding 0 objections and 16 opt-outs out of 329 class members [4.86%] "strongly support[] settlement");

3  *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *15 (N.D.

4  Cal. Apr. 22, 2010) (finding an opt-out rate of 0.4% supported settlement). In other words, "[t]he fact that

5  the overwhelming majority of the class willingly approved the offer and stayed in the class presents at

6  least some objective positive commentary as to its fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

7  1027 (9th Cir. 1998).

8          The average settlement payment from the Net Settlement Amount is $397.18 and the highest is

9  $1,169.84. (O'Connor Decl. ¶ 8.) This average net recovery is significantly higher than many wage and

10  hour class action settlements approved by California state and federal courts.[3]

11          **C.      The Court Should Approve the PAGA Settlement**

12          Pursuant to the Settlement Agreement, $150,000 from the Gross Settlement Amount shall be

13  allocated to the resolution of the PAGA claim, of which 75% (i.e., $112,500) will be paid directly to the

14  LWDA, and the remaining 25% (i.e., $37,500) will be paid to PAGA Members. (Settlement Agreement

15  ¶¶ 21, 27.)

16          This result was reached after good-faith negotiation between the parties. The amount was valued

17  as follows: Based on information and evidence produced by Defendant during discovery, Plaintiff's

18  Counsel determined that aggrieved employees worked a combined total of approximately 35,000 pay

19  periods during the PAGA statute of limitations period ("PAGA Period"). Statutory penalties would be

20

21  _____

22  [3] *See, e.g.*, *Sandoval v. Nissho of Cal., Inc.*, Case No. 37-2009-00091861 (San Diego County
    Super. Ct. Dec. 7, 2010) (average net recovery of approximately $145); *Fukuchi v. Pizza Hut*, Case No.
23  BC302589 (L.A. County Super. Ct. Sept. 29, 2006) (average net recovery of approximately $120);
    *Contreras v. United Food Group, LLC*, Case No. BC389253 (L.A. County Super. Ct. Sept. 10, 2009)
24  (average net recovery of approximately $120); *Ressler v. Federated Department Stores, Inc.*, Case No.
    BC335018 (L.A. County Super. Ct. Jan. 27, 2009) (average net recovery of approximately $90); *Doty v.*
25  *Costco Wholesale Corp.*, Case No. CV05-3241 FMC-JWJx (C.D. Cal. May 14, 2007) (average net
    recovery of approximately $65); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D.
26  Cal. Dec. 17, 2008) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc.*,
    Case No. 04CC00213 (Orange County Super. Ct. Jan. 20, 2006) (average net recovery of approximately
27  $35); *Gomez v. Amadeus Salon, Inc.*, Case No. BC392297 (L.A. Super. Ct. July 23, 2010) (average net
    recovery of approximately $20); *Jones v. Bath & Body Works, Inc.*, No. 2:13-cv-05206-FMO-AJW
28  (C.D. Cal. July 11, 2016) (average net recovery of approximately $50); and *Palencia v. 99 Cents Only
    Stores*, No. 34-2010-00079619 (Sacramento County Super. Ct. Oct. 11, 2012) (average net recovery of
    approximately $80).

1    calculated according to Labor Code 2699(f)(2): If, at the time of the alleged violation, the person

2    employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved

3    employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved

4    employee per pay period for each subsequent violation. Accordingly, Defendant's exposure would be

5    approximately $6,915,000 = (850 "initial pay periods" × $100) + (34,150 "subsequent pay periods" ×

6    $200).

7        The PAGA statute gives the Court wide latitude to reduce the amount of civil penalties "based

8    on the facts and circumstances of a particular case" when "to do otherwise would result in an award that

9    is unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(h). In reducing PAGA

10   penalties, courts have considered issues including whether the employees suffered actual injury from the

11   violations, whether the defendant was aware of the violations, and the employer's willingness to fix the

12   violation. *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 528 (2018) (awarding PAGA penalties

13   of only 0.2% of the maximum); *see also Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D. Cal.

14   2016); *Fleming v. Covidien Inc.*, No. ED CV 10-01487 RGK (OPX), 2011 WL 7563047, at *4 (C.D.

15   Cal. Aug. 12, 2011).

16       For example, during the penalty phase of trial in *Carrington*, the plaintiff requested PAGA

17   penalties in the amount of approximately $70 million. The trial court instead awarded only $150,000—

18   **or 0.21% of the maximum**—and stated that this reduction was warranted because (a) the Court did not

19   believe it was appropriate to impose multiple penalties per pay period in which a violation occurred and

20   (b) imposing the maximum penalty would be "unjust, arbitrary, and oppressive" based on Starbucks's

21   "good faith attempts" to comply with meal period obligations and because the court found the violations

22   were minimal. *Carrington*, 30 Cal. App. 5th at 517-18. The Court of Appeal affirmed the lower court's

23   reduced award of a $150,000 penalty under PAGA. *Id.* at 529. If a similar reduction had been applied

24   here, Plaintiff would have recovered only approximately $14,521.50 ($6,915,000 × 0.0021 reduction).

25       Likewise, in *Covidien*, the Court reduced the potential penalties by over 82%, awarding

26   $500,000 instead of maximum penalties of $2.8 million. *Covidien*, 2011 WL 7563047 at *4; *see also*

27   *Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112, 1135-36 (2012) (affirming 30% reduction

28   under specified PAGA claim where the employer produced evidence that it took its obligations

1  seriously); *Elder v. Schwan Food Co.*, No. B223911, 2011 WL 1797254, at *5-*7 (Cal. Ct. App. May

2  12, 2011) (reversing trial court decision denying any civil penalties where violations had been proven,

3  remanding for the trial court to exercise discretion to reduce, but not wholly deny, civil penalties); *Li v. A*

4  *Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2012 WL 2236752, at *17 (N.D. Cal. June 15,

5  2012) (denying PAGA penalties for violation of California Labor Code section 226 as redundant with

6  recovery on a class basis pursuant to California Labor Code section 226, directly); *Aguirre v. Genesis*

7  *Logistics*, No. SACV 12-00687 JVS (ANx), 2013 WL 10936035 at *2-*3 (C.D. Cal. Dec. 30, 2013)

8  (reducing penalty for past PAGA violations from $1.8 million to $500,000, after rejecting numerous

9  other PAGA claims).

10      A $150,000 PAGA settlement is accordingly within the range of reasonableness. *See Merante v.*

11  *Am. Inst. for Foreign Study, Inc.*, 2022 WL 2918896, at *6 (N.D. Cal. July 25, 2022) (PAGA award of

12  between 0.27% and 2% of the maximum estimated value of PAGA claims was "small" but "within the

13  range of reasonableness"); *Hamilton v. Juul Labs, Inc.*, No. 20-CV-03710-EMC, 2021 WL 5331451, at

14  *10 (N.D. Cal. Nov. 16, 2021) (approving a PAGA penalty settlement of 2.2%); *Smith v. Kaiser Found.*

15  *Hosps.*, 2020 WL 5064282, at *17 (S.D. Cal. Aug. 26, 2020) (finding that PAGA award that was 2.4%

16  of maximum estimated value of PAGA claims was not "unfair, inadequate, or unreasonable given the

17  risks of continued litigation"); *Naro v. Walgreen Co.*, No. 22-CV-03170-JST, 2025 WL 440057, at *3

18  (N.D. Cal. Jan. 16, 2025) ("The $100,000 proposed to be allocated to PAGA penalties represents

19  approximately 3.3% of the maximum PAGA liability, and courts in this circuit have regularly approved

20  settlement amounts constituting single digit percentages of the PAGA penalty.").

21      Likewise, allocating $150,000 of the $1,150,000 gross settlement fund to the settlement of

22  Plaintiff's PAGA claim is consistent with other hybrid class/PAGA settlements approved by California

23  federal courts. *See Cabrales v. Bae Sys. San Diego Ship Repair, Inc.*, No. 21-CV-02122-AJB-DDL,

24  2024 WL 4994339, at *17 (S.D. Cal. Dec. 5, 2024) (approving a PAGA allocation constituting

25  approximately 1% of the maximum settlement fund); *Alcala v. Meyer Logistics, Inc.*, No.

26  CV177211PSGAGRX, 2019 WL 4452961, at * 9 (C.D. Cal. June 17, 2019) (collecting cases in which

27  courts approved PAGA allocations between 0% and 2% of the gross settlement amount); *Castro v.*

28  *Paragon Indus., Inc.*, No. 1:19-cv-00755-DAD-SKO, 2020 WL 1984240, at *15 (E.D. Cal. Apr. 27,

2020) ("The resulting $75,000 civil penalty thus represents 2% of the $3,750,000.00 Gross Settlement Fund. The amount proposed to settle plaintiff's PAGA claims is consistent with other PAGA settlements approved by this court."); *Rodriguez v. Danell Custom Harvesting, LLC*, 293 F. Supp. 3d 1117, 1133 (E.D. Cal. 2018) (approving a PAGA apportionment of 0.67% of the gross settlement fund because the LWDA did not object); *Ahmed v. Beverly Health and Rehabilitation Servs., Inc.*, No. 2:16-1747, 2018 WL 746393, at *10 (E. D. Cal. Feb. 6, 2018) (approving 1% of gross settlement as PAGA settlement); *Van Kempen v. Matheson Tri-Gas, Inc.*, No. 15-CV-00660-HSG, 2017 WL 3670787, at *2 (N.D. Cal. Aug. 25, 2017) (approving allocation of $5,000, or approximately 1%, for PAGA claims out of the $370,000 total settlement fund); *Syed v. M-I, L.L.C.*, No. 1:12-cv-01718-DAD-MJS, 2017 WL 714367, at *13 (E.D. Cal. Feb. 22, 2017) (approving $100,000.00 in PAGA penalties for a California class with a $3,950,000.00 gross settlement fund); *Munoz v. UPS Ground Freight, Inc.*, Civ. No. 07–970, 2009 WL 1626376, at *1 (N.D. Cal. June 9, 2009) (approving $60,000 or 2% of total settlement as PAGA penalties); *Hopson v. Hanesbrands Inc.*, Civ. No. 08–844 EDL, 2009 WL 928133, at *9 (N.D. Cal. Apr. 3, 2009) (allocating $2,000 to PAGA settlement from $408,420.32 gross settlement fund, or approximately 0.5%).

Where PAGA penalties are negotiated in good faith and "there is no indication that [the] amount was the result of self-interest at the expense of other Class Members," such amounts are generally considered reasonable. *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, at *9 (N.D. Cal. Apr. 3, 2009); *see, e.g.*, *Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 579 (2010) ("[T]rial court did not abuse its discretion in approving a settlement which does not allocate any damages to the PAGA claims.").

**D.    The Requested Payment to the Settlement Administrator Is Reasonable and Should Receive Final Approval**

Plaintiff requests final approval of settlement administration costs in the amount of $14,500. (O'Connor Decl. ¶ 10.) CPT has promptly and properly distributed the Class Notice to all Class Members and completed its duties in accordance with the settlement terms and the Court's preliminary approval Order. (*See generally* O'Connor Decl.) Accordingly, the $14,500 payment is fair and reasonable and should be accorded final approval along with the rest of the Settlement terms.

1

## IV.    CONCLUSION

2          The Parties have negotiated a fair Settlement of the wage and hour claims that likely would not

3   have been brought, let alone successfully resolved, but for the effort and resolve of the Plaintiff and her

4   counsel. The Class Members' positive response indicates that the Settlement is fair and reasonable.

5   Accordingly, Plaintiff respectfully requests that this Court grant final approval of the Settlement

6   Agreement and enter judgment.

7

8   Dated: October 20, 2025                              Respectfully submitted,

9                                                 By:  /s/ Bevin Allen Pike

10                                                    Raul Perez
                                                     Bevin Allen Pike
11                                                   Daniel Jonathan
                                                     Trisha K. Monesi
12                                                   **CAPSTONE LAW APC**

13                                                   Attorney for Plaintiff Shania Cole

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28